**F I L E D**
United States Court of Appeals
Tenth Circuit

**MAR 13 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LORRAINE "JADE" MCKENZIE,

      Plaintiff - Appellant,

v.

DAVID DOVALA, in his official
capacity as Sheriff of Natrona County,

      Defendant - Appellee.

No. 99-8084

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 98-CV-289-D)**

Bernard Q. Phelan, Cheyenne, Wyoming, for the Plaintiff-Appellant.

Peter J. Young (Judith A.W. Studer with him on the brief), Schwartz, Bon, Walker & Studer, Casper, Wyoming, for the Defendant-Appellee.

Before **BALDOCK**, **POLITZ**[*] and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

---

[*] The Honorable Henry A. Politz, Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

Plaintiff Lorraine "Jade" McKenzie sued her former employer, the Natrona County Sheriff's Office, for an alleged violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213. The United States District Court for the District of Wyoming granted summary judgment in favor of defendant, and plaintiff appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude McKenzie made out a prima facie case of discrimination under the ADA and therefore reverse.

## I

McKenzie worked as a deputy sheriff with the Natrona County Sheriff's Office in Casper, Wyoming for ten years. In her decade of service, she reached the rank of sergeant within the organization, performing the duties of shift supervisor, and never had a negative performance evaluation. Beginning in early 1996, McKenzie suffered from a variety of psychological afflictions, including post-traumatic stress disorder related to childhood sexual abuse by her father.[1] As her condition worsened, she began to miss work frequently. Then, on August 15, 1996, McKenzie fired six rounds from her revolver into the ground at her father's grave; the next day, Sheriff David Dovala placed her on administrative leave. In the weeks that followed McKenzie suffered serious self-inflicted

---

[1] Around the time of her resignation, McKenzie was diagnosed with post-traumatic stress disorder, adjustment disorder, borderline personality disorder, and major depressive disorder, single episode, severe.

wounds and drug overdoses requiring several hospital visits. After being told that her leave pay was exhausted, McKenzie resigned voluntarily in October 1996 to seek psychological care.

In late November of the same year, after a course of medication and therapy, McKenzie was released by her supervising physician, Dr. Arlene Viray. After Dr. Viray sent the Sheriff a letter stating McKenzie's condition had improved sufficiently that she could return to work, McKenzie immediately sought re-employment at the Sheriff's Office and was assured that her application would be considered if openings became available. Despite her ten years of experience and her fine record as a patrol officer, McKenzie's application for employment was rejected at all the agencies to which she applied throughout Wyoming and Nevada. Unable to find work in law enforcement anywhere in the area, she returned to the Sheriff's Office in October 1997 and asked to be considered not only for a position as a patrol officer, but also for any job in the department. Dovala told McKenzie that he was unwilling to consider her application and admitted that the Office was reluctant to hire her because of "liability" concerns and fear of public uneasiness related to her past illness. (Appellant's App. at 187.) According to Dovala, members of his staff had told him that "based upon what they knew about what had happened in the previous year," McKenzie "would be better off in some other field." (Id. at 97.)

Dovala admitted to McKenzie that he had passed over her application when positions became available in the department between November 1996 and October 1997. He acknowledged that he eliminated McKenzie from consideration without ordering a standard psychological evaluation as provided for in Wyoming's Peace Officer Standards and Training ("POST") law, Wyo. Stat. Ann. § 9-1-704(b)(vii). McKenzie later learned that shortly after her resignation, Undersheriff Mark Benton[2] contacted the POST Commission to request that it revoke her certification as a peace officer.[3]

In this suit alleging discrimination prohibited by the ADA, McKenzie claims that Dovala refused to rehire her because he "regarded" her as disabled under 42 U.S.C. § 12102(2)(C) or because of her "record" of disability under § 12102(2)(B).[4] Concluding that McKenzie had not produced sufficient evidence to allow a jury to find she was "disabled" under either of those provisions, the district court granted defendant's motion for summary judgment. McKenzie v. Dovala, No. 98-CV-289-D, slip order at 1 (D. Wyo. Aug. 16, 1999).

---

[2] Since the initiation of this suit, Benton has replaced Dovala as Sheriff of Natrona County.

[3] Although McKenzie was not decertified by the Board upon Benton's request, her certification lapsed in October 1998, two years after her resignation.

[4] Plaintiff also brought a claim of retaliation in violation of Title VII, alleging she was denied a position because of her complaints of gender discrimination while still employed by the defendant. The district court granted summary judgment for the defendant, and that claim is not before us on appeal.

**II**

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.) (citation omitted), cert. denied, 528 U.S. 815 (1999). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms, 165 F.3d at 1326 (citation omitted). The nonmovant is given "wide berth to prove a factual controversy exists." Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998) (quoting Ulissey v. Shvartsman, 61 F.3d 805, 808 (10th Cir. 1995)).

**III**

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring . . . of employees." 42 U.S.C. § 12112(a).[5] A

---

[5] Recently, the Supreme Court held that the Eleventh Amendment bars suits by state employees to recover money damages for violations of the ADA.

(continued...)

- 5 -

"qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8). To establish a prima facie case of discrimination under the ADA, a plaintiff must show "(1) that [s]he is disabled within the meaning of the ADA; (2) that [s]he is qualified—with or without reasonable accommodation; and (3) that [s]he was discriminated against because of [her] disability." Aldrich v. Boeing Co., 146 F.3d 1265, 1269 (10th Cir. 1998) (internal quotation omitted); see also MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996). The district court granted summary judgment for the defendant because it concluded McKenzie could not show she was "disabled" so as to satisfy the first prong of the test. McKenzie v. Dovala, No. 98-CV-289, tr. oral ruling at 10 (D. Wyo. Aug. 16, 1999).

---

[5](...continued)
Bd. of Trs. of Univ. of Ala. v. Garrett, No. 99-1240, 2001 WL 167628, slip op. at 16–17 (February 21, 2001). Because "the Eleventh Amendment does not extend its immunity to units of local government," that decision does not call into question the applicability of the ADA to counties, which are considered units of local government. Id., slip op. at 11 (citing Lincoln County v. Luning, 133 U.S. 529, 530 (1890)); cf. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280–81 (holding a school board is not entitled to assert Eleventh Amendment immunity because it more closely resembles a county or city than an arm of the state).

A "disability" is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999). The ADA's implementing regulations, promulgated by the Equal Employment Opportunity Commission ("EEOC"), clarify what constitutes an "impairment that substantially limits . . . major life activities" under 42 U.S.C. § 12102(2)(A). Those regulations provide that "[w]ith respect to the major life activity of working . . . [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

## A. Disability

The district court concluded there was no genuine issue for trial as to whether McKenzie has a "disability" as defined in the ADA, 42 U.S.C. § 12102(2). McKenzie does not allege she had an actual limiting impairment at the time she sought re-employment. To the contrary, she testified that she was healthy and had obtained permission to resume work. Instead, McKenzie contends she suffered discrimination because she was "regarded as" disabled or, alternatively, because of a "record of" disability. Id. § 12102(2)(C), (B).

- 7 -

**1**

McKenzie argues that she submitted evidence creating a genuine issue of material fact as to whether the defendant "regarded" her as disabled. See id. § 12102(2)(C). Under this theory of disability, she sought to establish that she "[h]as none of the impairments defined in . . . this section but is treated by a covered entity as having a substantially limiting impairment," 29 C.F.R. § 1630.2(*l*)(3), arguing on summary judgment that she was "treated" by the Sheriff's Office as significantly restricted in her ability to perform the class of jobs under the broad heading of law enforcement.

The district court had before it abundant evidence supporting McKenzie's claim that she was regarded as disabled. Soon after McKenzie's resignation, Benton sought to have her decertified by the POST Commission because, as he explained, he lacked "trust" and "confidence" in her and "didn't feel that [she] should be a law enforcement officer any longer." (Appellant's App. at 115.) Because certification as a peace officer requires that an individual "[b]e free of any physical, emotional or mental conditions which might adversely affect [her] performance of duty," Wyo. Stat. Ann. § 9-1-704(b)(vii), a reasonable jury could infer from Benton's seeking decertification that Benton believed McKenzie had an "emotional or mental condition[]" that impaired her performance as a peace officer.

The testimony of Dovala and Benton suggests that at the time of McKenzie's reapplication, defendant treated her as substantially limited in her ability to work in law enforcement due to the psychological problems she had suffered in 1996. Dovala testified that when he met with McKenzie in 1997,

> I had concerns for her mainly, as a police officer, we often have to testify in court. And what generally happens, or happens frequently, is the officer is attacked. And I thought that if she had to do something, this might be brought up in court about what had happened to her in the past. And I was quite concerned that if she had to use violence, for sure, that would be brought up in court by the opposing side. And I thought she would suffer and so would the whole county.

(Appellant's App. at 97.) The following morning, the Sheriff's staff concluded at a meeting that McKenzie "would be better off in some other field." (Id.) Despite Dovala's admission that he "was worried about liability," he did not order a routine psychological or psychiatric examination to determine whether McKenzie was qualified to be a peace officer under Wyoming law. (Id. at 99.)

Benton, too, testified that at the time of McKenzie's 1997 application he was concerned about her history of "problems," as well as the possibility that fellow officers and the public would not "trust" her, and concluded that "it was [not] in her best interest or the best interest of the office for her to regain her position in law enforcement." (Id. at 111, 110.) He acknowledged that McKenzie was eliminated from consideration without an evaluation because of her history of psychological problems, admitting "she didn't make it to that step."

(Id. at 110.)  Benton also testified that although he was aware McKenzie had been authorized by Dr. Viray to return to work, he "didn't care for the concept" of her return.  (Id. at 108.)

According to the EEOC's interpretive guidelines, if an individual can show that a potential employer refused to hire her based on "myth, fear, or stereotype," including concerns regarding safety, insurance, liability, and acceptance by coworkers and the public, the individual will satisfy the "regarded as" component of the definition of disability.  29 C.F.R. pt. 1630 app. § 1630.2(l).  Dovala and Benton admitted that their concerns included safety, liability, and public acceptance.  The fact that defendant rejected McKenzie's application without submitting her for a standard psychological or psychiatric assessment as provided for by state law is further evidence that those concerns were based on "myths, fears, and stereotype" rather than on an individualized assessment of her qualifications.

While conceding defendant "may have considered plaintiff substantially limited in her ability to work as a deputy sheriff," the district court ruled that McKenzie failed to establish that she was regarded as unable to perform a "class of jobs" or a "broad range of jobs in various classes" as compared to others with comparable training, skills and abilities.  McKenzie v. Dovala, No. 98-CV-289, tr. oral ruling at 8–9.  "[T]o be regarded as substantially limited in the major life

- 10 -

activity of working, one must be regarded as precluded from more than a particular job." Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999); see also Bowen v. Income Producing Mgmt. of Okla., Inc., 202 F.3d 1282, 1287 (10th Cir. 2000).

Citing that rule, defendant argues that McKenzie has not shown a substantially limiting impairment under the ADA because after her resignation from the Sheriff's Office she worked in several different occupations, including caretaker, store clerk, and resident counselor. Contrary to this assertion, McKenzie's employment in the wake of her illness is beside the point in two respects. First, her claim under 42 U.S.C. § 12102(2)(C) is not that she currently has an impairment limiting her ability to work, but that the Sheriff's refusal to consider her application was based on his mistaken perception that she continues to suffer from such an impairment. Second, none of the positions in which McKenzie was employed during the cited period is part of the "class" of law enforcement jobs, her prior and preferred field. 29 C.F.R. § 1630.2(j)(3)(i).

The evidence McKenzie submitted shows a factual controversy as to whether defendant viewed McKenzie as limited in her ability to work in the class of jobs comprising law enforcement. Dovala's refusal to consider employing her in a less sensitive post within the Office, such as in the civil division responsible for serving papers and subpoenas, the records division, the administrative

- 11 -

division, or the jail division, suggests that he regarded her as substantially limited in her ability to work in an entire class of jobs, not merely in the particular job of patrol officer. Additionally, by seeking to have McKenzie decertified as a "peace officer" because he "didn't feel that [she] should be a law enforcement officer any longer," defendant effectively sought to bar her from taking a job as a campus police officer, an investigator for hunting and fishing outfitters, an inspector of livestock, a park superintendent or assistant park superintendent, a park ranger, or any other post that in Wyoming falls within the definition of "peace officer." Wyo. Stat. Ann. § 7-2-101(iv). Significantly, Dovala also testified that his staff rejected McKenzie's request to reapply because "[t]hey thought that she would be better off in some other field." (Appellant's App. at 97.) These statements constitute persuasive evidence that Dovala regarded McKenzie as unable to work in a class of jobs because of a psychological impairment.[6]

---

[6] Our principal case rejecting a claim of disability under 42 U.S.C. § 12102(2)(C) is readily distinguishable. Sorensen v. University of Utah Hospital, 194 F.3d 1084, 1089 (10th Cir. 1999), in which we held that a nurse diagnosed with multiple sclerosis did not establish she was "regarded as" disabled by her employer, is inapplicable because the plaintiff in that case alleged only that the hospital regarded her as precluded from holding the position of flight nurse. The plaintiff admitted that the hospital provided her with numerous opportunities to work as a nurse in other units following her diagnosis and hospitalization. Id.

Likewise, in Murphy it was undisputed that the plaintiff, a mechanic, was

(continued...)

By refusing to consider her for a job in her former workplace despite ten years of successful service, the Sheriff treated her as significantly restricted "as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). As Dovala and Benton acknowledged in their respective depositions, it is undisputed that someone with McKenzie's training, skills, and abilities, but without a psychological disability, could have been hired as a patrol officer. Viewing the factual record in the light most favorable to the plaintiff, we see a genuine issue for trial as to whether the Sheriff regarded McKenzie as disabled under the ADA.

**2**

Alternatively, McKenzie argues the defendant refused to consider her application on the basis of a "record" of disability. 42 U.S.C. § 12102(2)(B). A record of disability is a history of impairment that substantially limited a major life activity of a plaintiff. 29 C.F.R. § 1630.2(k); see also Sorensen v. Univ. of Utah Hosp., 194 F.3d 1084, 1086–87 (10th Cir. 1999). To satisfy this definition, McKenzie therefore must establish that at some point her impairment actually did

---

[6](...continued)
generally employable in his preferred field. 527 U.S. at 524. He was thus unable to show that he was regarded as restricted in a class of jobs and was "at most, regarded as unable to perform only a particular job." Id. at 525. By contrast, McKenzie submitted uncontroverted evidence that, since her illness, she has been regarded as unemployable in the "class of jobs utilizing [her] skills." Id. at 524.

- 13 -

substantially limit her ability to work. Noting "[i]t is dispositive that any arguable record of impairment related exclusively to her position of deputy sheriff," the district court concluded there was insufficient evidence to show that McKenzie ever was "significantly restricted" in either a class of jobs or a broad range of jobs in various classes. McKenzie v. Dovala, No. 98-CV-289, tr. oral ruling at 7–8.

In determining whether an impairment is substantially limiting such that it may support a record of disability under the ADA, the following factors are considered: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact" of the impairment. 29 C.F.R. § 1630.2(j)(2). McKenzie's record of absence from work on administrative leave, along with her physicians' reports, tends to show that her ability to work was substantially limited by her illness. Her complete inability to work prior to her resignation was due in part to at least one hospital admission, suggesting that the nature and severity of her impairment were grave. Physicians' reports indicate that McKenzie suffered from psychiatric problems during the year prior to her resignation. At least as early as April 1996, she missed work because of symptoms of post-traumatic stress disorder. The duration of her illness, which kept her from working throughout much of the summer and autumn of 1996, also indicates a record of impairment. Although

the permanent or long-term impact of McKenzie's illness would not tend to support a finding of disability, inasmuch as she has been released to return to work, the evidence as a whole could lead a reasonable jury to conclude that she had a record of a disability for purposes of the ADA.

When Dovala placed McKenzie on administrative leave, he told her that she would not be reinstated without "a complete psychological evaluation." (Appellant's App. at 49.) His subsequent failure to order a psychological assessment before turning down McKenzie's application suggests that his decision was based on his knowledge of her previous impairment and not on any current inability to perform the job's essential functions. This lack of an employer evaluation contrasts with McKenzie's own physician's assessment that "she is ready to return to work" and her psychotherapist's statement that she is "qualified to perform the duties of any law enforcement position for which she is technically qualified at the time she was discharged from treatment." (Appellant's App. at 145, 160.) Dovala even admitted in his deposition that the staff members' belief that McKenzie should no longer work in law enforcement was "based upon what they knew about what had happened the previous year." (Id. at 97.) That evidence suffices to create a genuine issue of material fact as to whether the Sheriff relied on McKenzie's history of psychiatric illness when he rejected her application.

## B. Qualification

While the district court's ruling did not address the second prong of a prima facie case under the ADA, which requires a showing that the plaintiff is a qualified individual, the defendant argues that McKenzie did not establish she could perform the essential functions of the job she sought. 42 U.S.C. §§ 12112(a), 12111(8). Contrary to that assertion, McKenzie produced unrebutted evidence that she was qualified for a position within the Sheriff's Office. She submitted the following exchange from Dovala's deposition:

> Q. [E]xcluding what you knew about Lorraine [McKenzie] relative to the events that occurred in 1996 . . . she was otherwise qualified for the position as a sheriff's officer, wasn't she?
>
> A. Excluding the events, yes, sir.

(Appellant's App. at 98.) In Benton's deposition, he agreed:

> Q. And excluding her history or her record of her psychological therapy, the events at the cemetery and on the mountain, was she—would she have been otherwise qualified for the position? . . .
>
> A. Yes.

(Id. at 110.) Dovala also acknowledged that during McKenzie's tenure, she had become a sergeant, "probably the most ranking officer in the sheriff's office" according to his testimony. (Id. at 94.)

Nonetheless, defendant argues that because Dr. Viray's letter did not articulate the specific tasks McKenzie was able or unable to perform at the time

- 16 -

of her release in November 1996, the letter can not support a finding that she was qualified to work in the Sheriff's Office.  That conclusion would follow only if we were to view the evidence in the light <u>least</u> favorable to the non-moving party, and that is not our task on review of summary judgment.  See <u>Simms</u>, 165 F.3d at 1326.

The ADA's definition of a "qualified individual with a disability" includes an individual who can perform the essential functions of the job she "holds <u>or</u> <u>desires</u>."  42 U.S.C. § 12111(8) (emphasis added).  Because the ADA explicitly covers job applicants as well as employees, its protection extends to a former employee with a disability who is qualified for a position she desires.  See <u>id.</u> § 12112(a) (prohibiting, inter alia, "discriminat[ion] . . . in regard to job application procedures" and "the hiring . . . of employees"), § 12112(b)(5)(A) (stating "discriminate" includes "not making reasonable accommodations to the . . . limitations of . . . <u>an applicant</u> or employee" (emphasis added)); <u>Smith v.</u> <u>Midland Brake, Inc.</u>, 180 F.3d 1154, 1161 (10th Cir. 1999) (en banc) ("To read the ADA otherwise, would render the word 'desires' meaningless, and we must avoid such a construction." (citations omitted)).  McKenzie asked to be considered for any existing job in the Sheriff's Office.  Under the ADA, McKenzie is a "qualified individual" even if she is no longer qualified as a patrol

officer as long as she can perform another job within the Sheriff's Office that she "desires." 42 U.S.C. § 12111(8).

According to defendant, McKenzie was denied employment based on conduct, including cutting her wrists and firing her gun at her father's grave, that would preclude her from passing the background check required under Wyoming law. See Wyo. Stat. Ann. § 9-1-704(b)(vi) (requiring background investigations for all peace officer candidates). That argument is flawed in two respects. The background investigation is conducted to determine that candidates "[h]ave good moral character." Id. Defendant does not argue the above-mentioned incidents are relevant to McKenzie's moral character, and such an argument would be implausible. The conduct that precipitated McKenzie's resignation reflects her illness, not an absence of "good moral character" that would cause her to fail a background investigation.[7]

More importantly, subject to narrow exceptions such as those for employees who pose a "direct threat" to the health or safety of others, Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1087 (10th Cir. 1997), the ADA's anti-discrimination provision "does not contemplate a stark dichotomy between 'disability' and 'disability-caused misconduct,' but rather protects both." Nielsen

---

[7] As Dovala and Benton admit, firing a gun in a cemetery, which prompted Dovala to place McKenzie on administrative leave, was not an illegal act.

- 18 -

v. Moroni Feed Co., 162 F.3d 604, 608 (10th Cir. 1998) (quoting Den Hartog, 129 F.3d at 1088). In the instant case, the ADA protects McKenzie from adverse employment action based on conduct related to her illness so long as she does not pose a "direct threat." 42 U.S.C. § 12113(a), (b); see Borgialli v. Thunder Basin Coal Co., 235 F.3d 1284, 1295 (10th Cir. 2000) (holding that a disabled plaintiff, to show she is qualified to work in an inherently dangerous job, must show that she does not pose a direct threat to others). A "direct threat" is defined as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The determination that an individual is unqualified because she poses a direct threat must be "based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job," which in turn must be based on "a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." 29 C.F.R. § 1630.2(r); see also Den Hartog, 129 F.3d at 1089.

Defendant has not argued that McKenzie poses a direct threat that could not be eliminated by reasonable accommodation. See 42 U.S.C. § 12111(3). There is no evidence suggesting in what way, once she had undergone rehabilitation and been cleared by her doctor, employing McKenzie in a position that does not require the use of force would create a direct threat to the public or

to her co-workers.[8]  In fact, when Benton was asked whether McKenzie had "act[ed] out in any way that . . . was detrimental to the Natrona County Sheriff's [Office] in her performance of her duties," he responded "I can't think of any at this time."  (Appellant's App. at 111.)  See Den Hartog, 129 F.3d at 1088–89 (holding that where the record contained testimony that plaintiff did not pose a direct threat, defendants were not entitled to summary judgment on the ground that plaintiff posed such a threat).  As we noted above, Dovala did not even submit McKenzie for a standard psychological test as provided for by Wyo. Stat. Ann. § 9-1-704(b)(vii).  Without an "individualized assessment" of the precise nature and likelihood of the risk stemming from McKenzie's illness, a genuine dispute of material fact remains regarding whether she is qualified to resume a position in the Office where she worked successfully for a decade.  29 C.F.R. § 1630.2(r).  McKenzie may or may not have had a disqualifying mental condition, but that is a question for a jury to answer with all the available evidence before it.

---

[8]  At summary judgment, defendant alleged that employing McKenzie would create "a significant safety risk."  (Appellee's App. at 41.)  Even if we were to read his motion as raising a "direct threat" defense, defendant did not present that argument on appeal, much less support it with a "reasonable medical judgment" that relied on "the best available objective evidence."  29 C.F.R. § 1630.2(r).

## C. Discrimination

With respect to the third and final element of her prima facie case, McKenzie submitted ample evidence that the Sheriff discriminated against her on the basis of his view that she suffered from a substantially limiting impairment. The ADA defines the term "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

Under the ADA, reasonable accommodation includes reassignment to a vacant position as well as "other similar accommodations." Id. § 12111(9)(B). The crux of McKenzie's case is her claim that defendant refused to accommodate her by considering her for a position in which she would not pose a threat to the public. As we noted above, see supra Part III.B, the ADA explicitly protects job applicants as well as employees. 42 U.S.C. § 12112(a), § 12112(b)(5)(A). According to McKenzie's deposition testimony, defendant passed over her application when openings became available at least once between her release in November 1996 and her meeting with Dovala in October 1997, and defendant has not advanced any evidence showing that there was no vacant position in one of those departments into which McKenzie could have been hired. The Sheriff's

refusal to consider McKenzie for a position in, for example, the jail or the records division is evidence of discrimination under the ADA. Of course, whether McKenzie will ultimately succeed in proving that prohibited discrimination occurred is a different question, one not appropriate for consideration on summary judgment.

McKenzie submitted sufficient evidence for a reasonable jury to find that she was qualified for a position within the Sheriff's Office, that she had a record of impairment or that the defendant regarded her as substantially limited in her ability to perform a class of jobs, and that he discriminated against her on the basis of that record or belief. Dismissing her claim on summary judgment was therefore improper. While it is disputed whether McKenzie can work safely in the Sheriff's Office, that is precisely the kind of dispute traditionally resolved by a jury, not by a court at the summary judgment stage. The ADA does not require Natrona County to put its staff and the public at risk by employing an individual who poses a threat to others, but it does require the County to provide due consideration to a disabled individual who might be able, with reasonable accommodation, to perform her work productively and safely.

**IV**

We **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.