**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 9 2004**

**PATRICK FISHER**
        **Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LORRAINE "JADE" McKENZIE,

     Plaintiff - Appellant,

v.

MARK BENTON, IN HIS OFFICIAL
CAPACITY AS SHERIFF OF
NATRONA COUNTY,

     Defendant - Appellee.

No. 02-8024

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 98-CV-289-D)**

---

Bernard Q. Phelan, Phelan-Watson Law Office, Cheyenne, Wyoming, for Appellant.

Peter J. Young (Rick L. Koehmstedt with him on the brief), Schwartz, Bon, Walker & Studer, Casper, Wyoming for Appellee.

---

Before **HENRY, HOLLOWAY** and **MURPHY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

This case is brought under the Americans with Disabilities Act (ADA). The district court initially granted summary judgment for defendant, but following a reversal and remand by this court earlier, *McKenzie v. Dovala*, 242 F.3d 967 (10th Cir. 2001), the case was tried before a jury. The jury returned a verdict for the defendant and McKenzie

again appeals.

# I

# PROCEDURAL HISTORY

Plaintiff Lorraine "Jade" McKenzie sued Sheriff David Dovala in his official capacity as Sheriff of Natrona County, Wyoming, alleging she was refused employment as a police officer because of her disability, in violation of the Americans with Disabilities Act (ADA). The United States District Court of the District of Wyoming exercised original jurisdiction over this cause under 28 U.S.C. § 1343 (4) and 28 U.S.C. § 1331 since it had presented to it a claim under the ADA, 42 U.S.C. 12101 *et. seq.* This court has appellate jurisdiction pursuant to 28 U.S.C. §1291.

The District Court initially granted summary judgment for the defendant. We exercised jurisdiction on appeal under 28 U.S.C. §1291, reversed that summary judgment, and remanded the case for trial. In the interim, Sheriff Dovala was succeeded by defendant Sheriff Mark Benton, the current sheriff.

As mandated by this court, the issues considered by the jury were whether McKenzie was qualified for a position within the Natrona County Sheriff's Office; whether she had a record of impairment or whether defendant regarded her as substantially limited in her ability to perform a class of jobs; and whether the defendant discriminated against her on the basis of her record. The jury returned a verdict for the defendant. They found that McKenzie was "disabled" under the law, that she was otherwise qualified, and that the defendants had "discriminated" against her because of

disability.  However, they also found that she posed a "direct threat" to the health and safety of herself and her co-workers.  Because McKenzie posed such a "direct threat," the jury found she was therefore not qualified to be a peace officer.

Judgment on the jury verdict in favor of the defendant was entered on February 21, 2002.  The notice of appeal was filed on February 27, 2002 and is therefore timely under Fed. R. App. P. Rule 4(a)(1).

## II

## STATEMENT OF FACTS

McKenzie was a deputy sheriff with the Natrona County Sheriff's Office in Casper, Wyoming for ten years.  During this time she reached the rank of sergeant, performing the duties of shift supervisor and never had a negative performance evaluation.  Beginning in early 1996, McKenzie suffered from a variety of psychological afflictions, including post-traumatic stress disorder (PTSD) related to childhood sexual abuse by her father.  As her condition worsened, she began to miss work frequently.

On August 15, 1996, McKenzie fired six rounds from her off-duty revolver into the ground at her father's grave.  The next day, Sheriff Dovala placed her on administrative leave and told her she would have to undergo a psychological evaluation by Dr. Robert Wihera, Ph.D., before she could return to duty.  In the weeks that followed, McKenzie suffered serious self-inflicted wounds and drug overdoses requiring several hospital visits.  On September 30, 1996, Dr. Arlene Viray, McKenzie's psychiatrist, wrote a letter to then Undersheriff Benton, stating that McKenzie's return to her previous

position might be hazardous to McKenzie and to the public and that further extensive evaluation is necessary. This letter was never withdrawn by Dr. Viray. After being told that her leave pay was exhausted, McKenzie resigned voluntarily in October 1996 to seek psychological care. She was assured that she would be considered for re-employment for any openings in the Department in the future.

In late November of 1996, after a course of medication and therapy, McKenzie was released by her supervising psychiatrist, Dr. Viray. Before her resignation and before seeing Dr. Viray, McKenzie had seen Darlene Bayu, a licensed counselor. After Dr. Viray sent the Sheriff a letter stating that McKenzie's condition had improved sufficiently so that she could return to work, McKenzie immediately sought re-employment at the Sheriff's Office and was assured that her application would be considered if openings became available.

It should be noted that Dr. Viray stated that this letter said nothing about future work performance or disability nor does it document any testing or evaluation. Dr. Viray testified at trial that she could not state that McKenzie is able to return to her prior duties because she has no idea what those duties are or what the essential functions of McKenzie's job are. In addition, Dr. Viray stated that McKenzie's PTSD does not have a linear progression, but rather is an episodic/crisis type condition, where there are peaks and valleys and no way to identify when McKenzie might experience problems again. Dr. Viray testified at trial that there are no guarantees McKenzie could return to work and she had no opinion whether McKenzie was a direct threat to herself or her fellow officers.

McKenzie's application for employment was rejected at all the agencies to which she applied throughout Wyoming and Nevada. Unable to find work in law enforcement anywhere in the area, McKenzie returned to the Sheriff's Office in October 1997 and asked to be considered for a position as a patrol officer or any other job in the department. Sheriff Dovala told McKenzie that he was unwilling to consider her application, even if she passed a psychological evaluation, and admitted that the Office was reluctant to hire her because of "liability" concerns and fear of public uneasiness related to her past illness. Sheriff Dovala said that members of his staff told him that "based upon what they knew about what had happened in the previous year," McKenzie "would be better off in some other field."

Sheriff Dovala admitted to McKenzie that he had passed over her application when positions became available in the department between November 1996 and October 1997. He acknowledged that when McKenzie visited with him in October 1997, he had met with his supervisors, Mark Benton and Lt. Kinghorn. Without a statutory psychological evaluation, they concluded that they were against considering McKenzie's application based on their knowledge of her prior psychological problems. *See* Wyoming's Peace Officer Standards and Training (POST) law, Wyo. Stat. Ann. § 9-1-704(b)(vii). Sheriff Dovala admitted that he did not consider any individualized assessment of McKenzie's present psychological profile when she was excluded from consideration for reemployment.

McKenzie later learned that shortly before her resignation, former Undersheriff

(now Sheriff) Mark Benton[1] contacted the POST Commission to request that it revoke her certification as a peace officer. Sheriff Benton testified that a psychological evaluation is required in the hiring process, that no evaluation was performed on McKenzie, and that the Sheriff's Office rejected McKenzie's application based upon "what they knew" about her background.

At trial the defendants finished their case by calling two "expert witnesses." First, Dr. Wihera, the aforementioned psychologist, testified. He had not evaluated McKenzie. He admitted that he could not testify that McKenzie was a direct threat, but said it was "reasonable" for the Department to conclude she was a "direct threat" based on past behavior. He stated that supervisory police officers were not qualified to perform psychological exams and that such supervisors were suited only for observing behavior. He also conceded that most police supervisors are unfamiliar with the "course" of PTSD, that over half of all people who have PTSD symptoms can recover within one year and PTSD is something one can recover from. He acknowledged that a psychological exam would be a way of determining whether someone had recovered from PTSD.

The other expert witness was Officer Tom Walton, a Chicago police supervisor. McKenzie objected that Officer Walton's opinion of the reasonableness of the conduct of the defendants in screening her out was irrelevant since such action must be based on an individualized assessment or other recent objective evidence. On *voir dire* Officer Walton said he was not offering an opinion as to the reasonableness of the defendants'

---

[1] Since the beginning of this law suit, Benton replaced Dovala as Sheriff of Natrona County.

conduct as it related to compliance with the ADA, but only with respect to what a reasonable police supervisor would do.

Officer Walton testified that it would be "totally improper" to re-hire McKenzie because she had engaged in dangerous behavior in shooting her father's grave. He also reviewed the medical/mental health history of the plaintiff and concluded that the mental health "history" of impairment precluded the reasonableness of re-hiring McKenzie. On cross-examination, Officer Walton admitted that his opinion was based solely on his knowledge of the mental health history of McKenzie; that he claimed no expertise in PTSD other than what he had read in the VFW journal.

In addition to the testimony of Sheriffs Benton and Dovala and their experts, the defendant called Officers Hadlock, Rostad, Walsh, Laing, Davy, Kinghorn, and Potter, all of whom testified about their contacts with McKenzie before, during and after her illness in 1996, and said they would have trouble working with McKenzie due to their knowledge of her past disability as that affected their concerns about "trust," "confidence," and "comfort."

Although the jury found that McKenzie was "disabled" under the law, that she was "otherwise qualified," and that the defendants had "discriminated" against her because of disability, they also found that McKenzie posed a "direct threat" to herself or other officers, and therefore was not "qualified" to be a peace officer. As a result, the jury returned a verdict for the defendant, and this appeal followed.

## III

## ISSUES PRESENTED

In her appeal, McKenzie asserts three claims of error. First, she argues that the district court abused its discretion when it admitted expert testimony from Dr. Wihera and Officer Walton who testified about the reasonableness of defendant's actions based upon knowledge of plaintiff's record of impairment, but without conducting an individual assessment. Second, she argues the district court erred when it failed to adopt her proposed jury instruction #17, which specified that disability and disability-related conduct should be treated the same (but did not address the exception where either disability or disability-related conduct constitutes a "direct threat.") Third, she says the trial court erred in instructing the jury that she, and not her employer, bore the burden of proving whether or not she posed a direct threat to herself or others, which would preclude her from the employment at issue. We hold that McKenzie's claims of error lack merit and accordingly affirm.

## IV.

## DISCUSSION

We will first address McKenzie's contentions that the district court erred by refusing to give her proposed Instruction No. 17, and that the District Court erred in admitting the expert testimony of Dr. Wihera and Officer Walton. We hold these contentions to be without merit. We also find that the district court did not commit reversible error in instructing the jury that McKenzie bore the burden of proving she did

not pose a "direct threat" and will address this question following our analysis of her first two arguments.

*1. Whether the district judge erred by refusing to give McKenzie's Instruction No. 17*

McKenzie contends that the district judge abused his discretion by refusing to give the jury Plaintiff's Instruction No. 17. We disagree.

It is well settled that "the omission or exclusion of a particular jury instruction is left to the sound discretion of the trial court." *Coletti v. Cudd Pressure Control,* 165 F.3d 767, 771 (10th Cir. 1999). This court reviews the district court's decision "to give a particular jury instruction for abuse of discretion." *Garrison v. Baker Hughes*, 287 F.3d 955, 963 (10th Cir. 2002) (citations and quotation marks omitted). As long as "the charge as a whole adequately states the law, the refusal to give a particular instruction is not an abuse of discretion." *United States v. Suntar Roofing, Inc.,* 897 F.2d 469, 473 (10th Cir. 1990).

McKenzie's proposed Instruction No. 17 stated:

> The ADA's anti-discrimination provision does not contemplate a stark dichotomy between "disability" and "disability-caused misconduct," but rather protects both. Therefore, since mental illness is manifested by abnormal behavior and is diagnosed on the basis of abnormal behavior, the ADA does not permit an employer to discriminate against a qualified person with a disability based on conduct related to her mental illness.
>
> Under the ADA an employer should consider whether a mentally

disabled employee's purported misconduct could be remedied through a reasonable accommodation. If no reasonable accommodation can be provided, an employer may discriminate against an employee for conduct only if the conduct poses a present direct threat to the health and safety of others. Otherwise, an employer must tolerate eccentric or unusual conduct caused by the employee's mental disability so long as an employee can satisfactorily perform the essential functions of her job.

VI App. 996.

McKenzie asserts that it was reversible error to fail to instruct the jury that the ADA's anti-discrimination provision does not contemplate a stark dichotomy between "disability" and "disability-caused conduct," but rather protects both as we held earlier. *McKenzie*, 242 F.3d at 974; *Den Hartog,* 129 F.3d at 1088; 42 U.S.C. § 12112(a). However, we agree with the defendant that Plaintiff's Instruction No. 17 contains a significant omission in not mentioning the "direct threat" exception to the ADA's anti-discrimination policy. The issue of "direct threat" was of importance in this trial considering the inherently dangerous nature of law enforcement.[2]

---

[2] We disagree with McKenzie's argument that the defendant could not raise the issue of "direct threat" at trial because it was not included as an affirmative defense in defendant's answer. See Brief of Appellant at 2 ("In an ADA case . . . where the employer has not affirmatively alleged that [plaintiff] poses a 'direct threat'). We note that the record shows that the issue of whether McKenzie posed a "direct threat" was included in the district court's Pretrial Order as a factual question in this case. App. 1018.

This court has stated, "'[w]hen an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings' because 'the pretrial order is the controlling document for trial . . . the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim.'" *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (quoting *Expertise Inc., v. Aetna Fin. Co.,* 810 F.2d 968, 973 (10th Cir. 1987). We also note that the record shows that the "proposed" pretrial order did not contain "direct threat" as a factual issue. TK App. 1095. As defendant points out "at the request of defense counsel the issue of 'direct threat' was added, and included in the final pretrial order." Brief of Appellee at 50 & n.9.

In the requested instruction, McKenzie did not make reference to the "direct threat" exception. Instead, she asked the district judge to instruct the jury that "the ADA does not permit an employer to discriminate against a qualified person with a disability based on conduct related to her mental illness." *See* VI App. 996. The district judge accurately observed that the ADA anti-discrimination policy is "subject to narrow exceptions such as those for employees who pose a direct threat to the health or safety of others." V App. 855; *see Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1087 (10th Cir. 1997) ("[A]n employer may take action against an employee who poses a 'direct threat' to the health or safety of other individuals in the workplace.") (citing 42 U.S.C. § 12113(b)(1994)).

We have previously held that "requested instructions that are misstatements of the law . . . are correctly refused." *United States v. McKinney,* 822 F.2d 946, 949 (10th Cir. 1987); *see also United States v. Stoddart,* 574 F.2d 1050 (10th Cir. 1978). Therefore, we hold that the district judge did not err in rejecting Plaintiff's Instruction No. 17.

*2. Expert Testimony of Dr. Richard Wihera and Officer Tom Walton*

McKenzie asserts that the district court erred by admitting expert testimony of Dr. Wihera and Officer Walton regarding the reasonableness of defendant's

---

We agree with defendant that to the extent necessary, the pleadings have been amended to incorporate "direct threat" as an issue of fact in the instant case. Additionally, defendant has consistently asserted that McKenzie's employment would have posed a safety risk and liability concern in the inherently dangerous profession of law enforcement.

refusing to reemploy McKenzie. We disagree.

Under the Federal Rules of Evidence the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrill Dow Pharmaceuticals,* 509 U.S. 579, 589 (1999). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert* the Court held that the "general acceptance" test for the admissibility of novel scientific evidence formulated in *Frye v. United States,* 293 F.1013 (1923) was superseded by the adoption of the Federal Rules of Evidence. *Daubert* teaches that a district judge, when he encounters a proffer of expert scientific testimony, "must determine at the outset, pursuant to [Fed.R.Evid.] 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592. In this way the district judge under *Daubert*, "performs an important gatekeeping role in assessing scientific evidence." *Hollander v. Sandoz Pharmaceuticals Corp.,* 289 F.3d 1193, 1204 (10th Cir. 2002).

*A. Dr. Richard Wihera*

We agree with defendant's argument that the district judge's decision to admit the expert testimony of Dr. Wihera should be reviewed for plain error. McKenzie specifically objected to Dr. Wihera's "qualifications" during his testimony. V App. 757. On appeal, McKenzie raises an argument concerning whether Dr. Wihera's testimony was "relevant." Brief of Appellant at 47-48. Because McKenzie did not timely object to the "relevance" of Dr. Wihera's testimony, we review for plain error only.

In civil cases, "[t]he 'plain error' exception . . . has been limited to errors which seriously affect 'the fairness, integrity or public reputation of judicial proceedings.'" *McEwen v. City of Norman, Okla.,* 926 F.2d 1539, 1545 (10th Cir. 1991) (quoting *Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1460 (10th Cir. 1987)). The "miscarriage of justice" must be "patently erroneous and prejudicial." *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1516 (10th Cir. 1984), *aff'd on other grounds*; 472 U.S. 585 (1985).

The district judge did not commit plain error by allowing Dr. Wihera to testify as an expert. He is an expert in law enforcement qualification standards who has performed "about 15,000 to 20,000 pre-employment evaluations" concerning law enforcement personnel qualifications. V App. 754. He has worked "for agencies in about 15 different states" and has done extensive work with Wyoming law enforcement agencies, including the Natrona County Sheriff's Department. *Id.* Drawing on this experience, Dr. Wihera testified that "the

sheriff's department acted in a reasonable manner in not pursuing [McKenzie's] application based upon the behaviors she had displayed in the past." *Id.* at 761. We agree with the defendant that this testimony is particularly relevant because it assisted "the trier of fact to understand or determine" (*Daubert,* 509 U.S. at 592) the factual question of whether McKenzie was a qualified person with a disability.

The ADA states:

A qualified individual with a disability. The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position as such individual holds or desires.
42 U.S.C. § 12111(8).

We note that McKenzie had an opportunity to cross-examine Dr. Wihera before the jury. *Black v. M & W Gear Co.,* 269 F.3d 1223, 1231 (10th Cir. 2001) (holding no plain error existed in admission of expert testimony and noting that appellant cross-examined the expert). Additionally, McKenzie was permitted to *voir dire* Dr. Wihera before the jury in order to reveal any questions about his "qualifications." V App. 757-60.

We agree with the defendant that the district court did not err when it allowed Dr. Wihera to testify as an expert. We hold that there was no error which affected the "fairness, integrity or public reputation of the judicial proceedings," *McEwen*, 926 F.2d at 1545 (citations and quotation marks omitted). In sum it does not appear that the district judge made any error in admitting Dr. Wihera's

testimony.

*B. Officer Tom Walton*

McKenzie also argues that the district judge should have excluded the testimony of Officer Walton because it was not relevant. Again, we do not agree. This court reviews "the admission or exclusion of expert testimony for abuse of discretion." *United States v. Arney,* 248 F.3d 984, 990 (10th Cir. 2001). We give substantial deference to the district judge's application of *Daubert*. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). The abuse of discretion standard assures that "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *McEwen*, 926 F.2d at 1553-54 (10th Cir. 1991). The *Daubert* test "ensures that the proffered evidence is both 'reliable' and 'relevant.'" *Hollander,* 289 F.3d at 1204 (quoting *Daubert*, 509 U.S. at 589). Reliability is judged by examining "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert,* 509 U.S. at 592-93. Relevance is evaluated based on "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593.

On appeal, McKenzie here focuses on the district court's application of the

"relevance" prong of the *Daubert* inquiry. Brief of Appellant at 44, 47. We do not feel that the district judge abused his discretion in finding that Officer Walton's testimony could be "applied to the facts in issue" in this case. *Daubert*, 509 U.S. at 593. As mentioned above, "Rule 702 . . . requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance." *Daubert,* 509 U.S. at 591. "'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Id.* (quoting 3 Weinstein & Berger ¶ 702[02], p. 702-18). *See also United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985) ("An additional consideration under Rule 702 – and another aspect of relevancy – is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute"). The consideration "has been aptly described by Judge Becker as one of 'fit.'" *Daubert*, 509 U.S. at 591 (quoting *Downing*, 753 F.2d at 1242). Rule 702's "'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert,* 509 U.S. at 591-92.

Officer Walton is a Deputy Chief of the Patrol Division in the Chicago Police Department. V App. 786. At the time of the trial, Officer Walton had served nearly thirty years with the Department, including twenty-two years in "patrol operations," four years as "a director of training and education," and held the position of "certified police instructor." V App. 786. We agree with the

defendant that the district judge could consider Officer Walton's testimony, V

App. 791-97, regarding the "duties, responsibilities, and rigors of the law

enforcement profession" as helpful to the jury in determining whether McKenzie

was a qualified individual or whether it was "objectively reasonable" for

defendant to not consider rehiring McKenzie. *Bragdon*, 524 U.S. at 650 (holding

that "objective reasonableness" is a relevant inquiry).

Further, Officer Walton's testimony was also relevant to the jury's

examination of whether McKenzie was a "direct threat" to herself or others. In

Jury Instruction No. 21,[3] which concerned "direct threat," the jury was asked to

---

[3] Jury Instruction No. 21 stated:

> The term "direct threat" means a significant risk to the health or safety of herself or others that cannot be eliminated by reasonable accommodation.

> There are several factors used to determine whether an individual poses a direct threat. These factors include:
> 1. The duration of the risk;
> 2. The nature and severity of the potential harm;
> 3. The likelihood that the potential harm will occur; and
> 4. The imminence of the potential harm.

> These factors are to be evaluated based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. Further, they are to be evaluated based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence.

> The ADA does not require an independent medical examination when there is available objective evidence. The ADA uses the conjunctive "and/or" between medical knowledge and objective evidence. As such, the determination whether an employee presents a "direct threat" may be based on valued medical analyses and/or on other objective evidence. VI App. 985.

determine the "duration, magnitude and likelihood of the potential harm posed by" McKenzie. Brief of Appellee at 67-68. We believe that Officer Walton's testimony regarding the dangerous nature of law enforcement, and the need for good judgment and self-control, was relevant in assisting the jury in making this determination. V App. 796-97.[4] Thus, we hold that the district court did not err in admitting Officer Walton's testimony.

*3. The claim that there was error by instructing the jury that it was McKenzie's burden to prove she did not pose a "direct threat" to herself or others*

McKenzie argues that the district court erred in instructing the jury that in cases involving an inherently dangerous job, an individual with a disability bears the burden of proving that she did not pose a direct threat. We do not agree.

This court reviews *de novo* "a timely challenge to a jury instruction to determine whether, considering the instructions as a whole, the jury was misled." *Wilson v. Muckala, M.D.,* 303 F.3d 1207, 1214 (10th Cir. 2002). "In reviewing such allegations, this court examines the record as a whole to determine whether the instructions state the applicable law and provide the jury with an appropriate understanding of the issues and the legal standards to apply." *Faulkner v. Super Valu Stores*, 3 F.3d 1419, 1424 (10th Cir. 1993).

---

[4] "[Y]ou're often in hazardous situations, risky situations, situations in which judgment is – is critical. You make quick decisions often under very tense, uncertain, very rapidly involving [sic] circumstances, pressure-filled circumstances. You need to enforce the law within the law. You need to have control of yourself. Anger management is absolutely critical because you will be tested to the limit. You need to be able to stay professional and control your emotions and not react in an emotional way." V App. 796-97 (Officer Walton's testimony).

McKenzie asserts that "failing to accurately describe the elements of a *prima facie* case and shifting the burden of proving absence of an affirmative defense is reversible err [sic]." Brief of Appellant at 31. She takes issue with the district judge's instruction to the jury that for Plaintiff to establish her claim of unlawful discrimination by Defendant, she had the burden to prove by a preponderance of the evidence that, *inter alia*, "Plaintiff, at the time she sought re-employment with the Natrona County Sheriff's Office, did not pose a direct threat to herself or others." Brief of Appellant at 30-31 (quoting Jury Instruction No. 8, 6 App. 972). Additionally, McKenzie objects to Jury Instruction No. 20, which stated:

> In order to show that she is qualified to work in an inherently dangerous occupation, plaintiff must prove by a preponderance of the evidence that she did not pose a direct threat to herself or others.
> Jury Instruction No. 20, 6 App. 984.

McKenzie contends that whether "an employer may justifiably exclude an otherwise qualified individual with a disability because that person poses a 'direct threat' to the health and safety of others is an affirmative defense the burden of proof of which lies with the defendant employer." Brief of Appellant at 3 (citing 42 U.S.C. § 12113(b); 29 C.F.R. § 1630.2(r); *Den Hartog v. Wasatch Academy*, 129 F.3d 1076 (10th Cir. 1997); *McKenzie v. Dovala*, 242 F.3d 967 (10th Cir. 2001)).

This circuit first considered the question of "direct threat" under the ADA,

as codified in 42 U.S.C. §§12111(3) and §§12113, in *Den Hartog,* 129 F.3d 1076, *supra*. In *Den Hartog,* we categorized the existence of a "direct threat" as an "affirmative defense" to a charge of disability discrimination, and noted that: "[w]ithout running afoul of the ADA, ***an employer*** may define a qualification for any job that 'an individual shall not pose a direct threat to the health or safety of [the individual himself] or other individuals in the workplace.'" *Id* at 1088 (emphasis added).  We did not address which party bears the burden of proving "direct threat."  In analyzing *Den Herzog*, however, we discussed both the arguments raised by defendant asserting that plaintiff did constitute a direct threat, and the arguments by plaintiff refuting that position. *Id* at 1089.

We revisited the "direct threat" question three years later in *Borgialli v. Thunder Basin Coal Co.,* 235 F.3d 1284 (10th Cir. 2000).  There, this court discussed the split among the federal appellate courts regarding which party bears the burden of proof on the presence or lack of a "direct threat."  *Id* at 1291-94.  However we did not expressly state which rule we would follow.  We noted some precedent which placed the burden of proof at all times on the employee.  *See Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996), *cert denied,* 519 U.S. 1118 (1997) ("the employee retains at all times the burden of persuading the jury either that he was not a direct threat or that reasonable accommodations were available.")  On the other hand, we have relied on the Fifth Circuit's *Rizzo v. Children's World Learning Centers, Inc.*, which stated that "it is unclear from the statutory scheme who has the burden on this issue.  It may depend on the facts of

the particular case." 213 F.3d 209, 213, n.4 (5th Cir. 2000). *Rizzo* suggests, and *Borgialli*, 235 F.3d at 1294, concurs that the burden may fall on the employer, but with an exception: "where the essential job duties necessarily implicate the safety of others, [then] the burden may be on the plaintiff to show that she can perform those functions without endangering others . . . ." *Rizzo,* 213 F.3d at 213, n.4 (citations omitted).

In connection with performance of essential job functions, we note the following analysis in *E.E.O.C. v. Amego, Inc.,* 110 F.3d 135, 144 (1st Cir. 1997):

> Where those essential job functions necessarily implicate the safety of others, plaintiff must demonstrate that she can perform those functions in a way that does not endanger others. There may be other cases under Title I where the issue of direct threat is not tied to the issue of essential job functions but is purely a matter of defense, on which the defendant would bear the burden..."[5]

The instant case does not involve some of the circumstances of *Amego, Inc.*, such as the safety of others where the essential functions of a job involve the care of others unable to care for themselves. 110 F.3d at 143. However here there is a special risk to others, co-workers and the public, who are exposed to the danger of a firearm in the control of McKenzie. Moreover McKenzie's erratic instances of behavior must be considered as well. We are, therefore, persuaded that it is proper

---

[5] *But see Hargrave v. Vermont*, 340 F.3d 27, 35 2nd Cir. (2003) ("In the employment context, it is the defendant's burden to establish that a plaintiff poses a 'direct threat' of harm to others, *see Lovejoy-Wilson* [v. NOCO Motor Fuel, Inc.,] 263 F.3d [208,] 220 [(2001)] (citing legislative history of the ADA, H.R.Rep. No. 101-485, pt. 3, at 46 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 469."); *Hutton v. Elf-Altochem N. Am. Inc.*, 273 F.3d 884, 893 (9th Cir. 2001) ("Because it is an affirmative defense, the employer bears the burden of proving that an employee constitutes a direct threat.")

for the defendant-employer here to consider the direct threat factor in connection with possible re-employment of McKenzie. And, likewise, we are convinced it was not error for the trial judge to instruct the jury that McKenzie bore the burden of proof on not being a direct threat. The job qualifications here properly included the essential function of performing McKenzie's duties without endangering her co-workers or members of the public with whom she came in contact.

We dealt with the "direct threat" question in our earlier consideration of the facts of this instant case. In *McKenzie v. Dovala*, 242 F.3d 967, *supra*, we reversed a summary judgment for defendant-employer Dovala, then Sheriff of Natrona County, concluding that McKenzie had successfully made out her prima facie case under the ADA and submitted sufficient evidence to raise issues of material fact appropriately determined by a jury. We cited our earlier opinion in *Borgialli*, 235 F.3d at 1295, and stated that it held that "a disabled plaintiff, to show she is qualified to work in an inherently dangerous job, must show that she does not pose a direct threat to others." *McKenzie v. Dovala*, 242 F.3d at 974.

On remand of this case, the parties agreed to stipulate that the occupation in question was "inherently dangerous." Aplt. App. vol. 4 p. 618. Then, over plaintiff's objection, the district court adopted a jury instruction placing the burden of showing she would not be a "direct threat" on the plaintiff McKenzie.

We hold that the district court did not err in placing that burden on the plaintiff here. The notion that an employee might constitute a "direct threat" to

persons in the workplace, and the permissible conduct of an employer in such circumstances, is discussed in the ADA at sections 42 U.S.C. §12113(a), §12113(b), §12111(3), and also in related language at §12112(b)(6). Section 12113(a), under the heading "Defenses," states the following:

> It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter."
> 42 U.S.C. §12113(a).

Thus "direct threat" is addressed under "Defenses." However, the statute further states that "[t]he term 'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." *Id.* §12113(b). Moreover the plaintiff had demonstrated clearly reckless use of her department issued off duty firearm when she fired six shots into her father's grave. McKenzie's irresponsible conduct could have tragic consequences if it reoccurred while she was on duty. In addition, evidence was presented at trial of McKenzie engaging in violent conduct which had the potential to be a direct threat to others and which, in fact, led to physical harm to herself.[6] As a result, not only was the occupation in question

---

[6] The jury heard testimony that McKenzie was committed to a mental hospital due to concerns regarding safety and the failure of out-patient treatment, App. 1108-27, McKenzie was found by police on a mountain after having cut her wrist. App. 1128-29. Subsequently, Dr. Viray indicated that McKenzie's self-mutilation was continuing and that McKenzie was punching

"inherently dangerous," as stipulated by the parties, but McKenzie demonstrated particularly reckless and dangerous conduct. We hold that under these circumstances, the district court did not err by instructing the jury that the burden rested on the plaintiff to prove that she did not pose a "direct threat" to others in the workplace.

**AFFIRMED.**

---

walls in anger. Three days later, McKenzie talks about suicide and admits self-mutilation. App. 1131. The same day, McKenzie is found by an employee at Crestview Hospital on a patio punching boards and screaming "let me out of the box." App. 1132-40. A little over two weeks later, McKenzie was found at a motel after overdosing on medication. App. 1141-49.