**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 25 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD MILLER,

      Plaintiff - Appellee,

vs.

EBY REALTY GROUP LLC, formerly
known as EMC, Inc.,

      Defendant - Appellant,

----------------------

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Amicus Curiae.

Nos. 03-3307 and 04-3073

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 01-CV-2333-CM)**

Mick W. Lerner, Law Office of Mick Lerner, P.A., Overland Park, Kansas (and J. Randall Coffey, Bioff, Finucane, Coffey, Holland & Hosler, LLP, Kansas City, Missouri, with him on the brief), for Plaintiff - Appellee.

William E. Quirk, Shughart, Thomson & Kilroy, P.C., Kansas City, Missouri (and Carl A. Gallagher, Mcanany, Van Cleave & Phillips, P.A., Kansas City, Kansas, with him on the briefs), for Defendant - Appellant.

Susan L.P. Starr, (Eric S. Dreiband, General Counsel, Carolyn L. Wheeler, Acting Associate General Counsel, and Vincent J. Blackwood, Assistant General

Counsel, with her on the brief), Equal Employment Opportunity Commission, Washington, D.C., for Amicus Curiae.

---

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge and **LUCERO**, Circuit Judge.

---

**KELLY**, Circuit Judge.

---

Plaintiff-Appellee Richard Miller sued his former employer Defendant-Appellant Eby Realty Group, LLC, ("Eby"), the successor in interest to Eby Management Company, Inc. ("EMC"), alleging unlawful age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and breach of contract.[1] The case was tried to a jury, which returned a verdict for Mr. Miller finding that (1) Eby illegally discriminated against Mr. Miller based on his age, (2) the discrimination was willful, and (3) Eby breached its employment contract with Mr. Miller. The jury awarded $222,087 for the age discrimination claim and $10,000 for the breach of contract claim. The court further awarded liquidated damages based on the jury's finding of willfulness in the amount of $222,087, $278,316 for front pay, $51,000 for attorney's fees, and $4,880.72 in costs, for a total judgment of $788,370.72. On appeal, Eby makes three arguments: (1) the evidence was insufficient to support a

---

[1]     Mr. Miller's retaliation claim was dismissed by the district court on summary judgment, which Mr. Miller has not appealed.

finding of age discrimination, (2) the district court erred in instructing the jury, and (3) the district court erred in excluding evidence offered by Eby. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## Background

When reviewing a jury verdict, we review the record in favor of the prevailing party, and "give that party the benefit of all reasonable inferences to be drawn from the evidence." Abuan v. Level 3 Communications, Inc., 353 F.3d 1158, 1164 (10th Cir. 2003). Viewed accordingly, the record reveals the following facts.

At age 54, Mr. Miller was hired as general manager for what was then EMC. EMC managed assisted living facilities, generating its revenue from management fees charged to these facilities. EMC was wholly owned by Eby Holdings, Inc., which in turn was owned by Dr. Ray Cook and several members of the Eby family, including Don & Judy Eby and their sons Joe, Mike, and Andy. Eby Holdings, Inc. also owned several other related entities, including Eby Development and Management Company ("EDM"). EDM built assisted living facilities and sold them to other companies once they became operational. EMC then managed these facilities for the buyers. Although related, each of the Eby companies were separate corporate entities with separate officers and boards of

directors. During his employment with the Eby's, Mr. Miller worked exclusively for EMC.

Mr. Miller was hired by Don Eby ("Don"), the patriarch of the Eby family, and his immediate superior was Mike Eby ("Mike"), who was the President of EMC. Before he was hired, Mr. Miller's age was not addressed. However, on his first day with EMC, Don remarked that he had pain in his knees and hips and that he was "getting old and creaky." Mr. Miller then offered that Don was probably younger than he was saying, "If you're getting old and creaky, what's that make me?" Through this conversation, Don was surprised to learn that Mr. Miller was two years his senior and commented on Mr. Miller's youthful appearance.

Sometime within Mr. Miller's first year with EMC he attended a business conference with Don, Judy, and Mike Eby. During the conference a slide was shown of an elderly man with "craggily and tight" skin wearing a bathing suit. In front of Mr. Miller, Don leaned over and told his wife and son, "[T]hat's what [Mr.] Miller's going to look like soon."

Judy Eby also made comments about Mr. Miller's age and appearance while he was employed at EMC. Once she said, "I can't believe you're older than Don, because he has a lot more gray hair or all gray hair and you don't." On another occasion Judy saw Mr. Miller run down a hallway and remarked that he was in "pretty good shape for his age," unlike Don who had knee or hip problems.

- 4 -

After working for EMC for over two years, Mr. Miller was called into Don's office and terminated. Don told Mr. Miller the Eby companies were in financial trouble and that he was being terminated due to a overall reduction in force ("RIF"). Don also told Mr. Miller that his position was being eliminated, and that his duties would be assumed either by Mike or Don. However, the day after Mr. Miller was fired, Alan Fairbanks, who was 24 years younger than Mr. Miller, was hired as EMC's general manager at roughly the same salary Mr. Miller had before he was terminated. Mr. Fairbanks had been an Eby employee longer than Mr. Miller and had previously been employed by EMC. However, immediately before Mr. Miller was terminated, Mr. Fairbanks was employed by EDM, and Don testified the relative seniority of Mr. Fairbanks and Mr. Miller was not a factor in his decision to terminate Mr. Miller.

Before bringing suit, Mr. Miller sought administrative review with the Equal Employment Opportunity Commission ("EEOC"). During this process, Eby wrote a letter to the EEOC detailing its reasons for terminating Mr. Miller, which indicated that along with a RIF, Mr. Miller's performance was a factor in its decision to terminate him. However, after the EEOC issued a right to sue letter and Mr. Miller filed this suit, Eby stipulated that his performance was not a factor in its decision to fire him.

At the time Mr. Miller was terminated, some of the Eby companies,

especially EDM, were experiencing financial difficulties due to a downturn in the assisted living industry, but EMC was seemingly not experiencing these same difficulties. Before Mr. Miller was hired, EMC had never made a profit; however, after Mr. Miller's first year as general manager, EMC made a profit of over $300,000, and the company was forecasting similar results when Mr. Miller was terminated.

Before trial, Mr. Miller filed a motion in limine seeking to exclude all evidence of his performance as EMC general manager, and the financial condition of the Eby companies other than EMC. However, Mr. Miller also indicated his intent to introduce the EEOC letter stating Eby considered his performance in deciding to terminate him as evidence that Eby gave the EEOC a false reason for its actions. Eby objected, arguing that if the court allowed the EEOC letter to be admitted it should have the opportunity to explain its statement with evidence of Mr. Miller's performance. The district court granted Mr. Miller's motion, in part, ruling that evidence of Mr. Miller's prior performance was not admissible in light of the parties' stipulation, but that Mr. Miller could use the EEOC letter to prove pretext. However, the district court denied the motion as to evidence of the financial condition of the other Eby companies.

During trial, Eby twice moved for judgment as a matter of law ("JMOL") pursuant to Fed. R. Civ. P. 50(a), arguing the evidence was insufficient to support

a finding of age discrimination. The district court denied both motions, and the case was submitted to the jury. After deliberating for three hours, the jury returned a verdict for Mr. Miller finding that Eby had willfully discriminated against him on the basis of his age in violation of the ADEA, and that Eby breached its employment contract with Mr. Miller.[2] Eby then filed a post-verdict motion for JMOL, or in the alternative for a new trial, pursuant to Fed. R. Civ. P. 50(b), arguing, among other things, that (1) the evidence was insufficient to support the verdict, (2) the district court erred in instructing the jury, and (3) the district court erred in excluding evidence proffered by Eby. Again, Eby's motion was denied. Eby now appeals the district court's denial of it motion for JMOL or in the alternative for a new trial, raising these same three issues.

## Discussion

### A. Sufficiency of the Evidence

Eby argues the district court erred in denying its motion for JMOL as there was insufficient evidence to support the jury's finding of age discrimination, or that such discrimination was willful. We review the denial of a motion for JMOL de novo, using the same legal standard as the district court. Greene v. Safeway

---

[2]As Eby has not appealed the jury's verdict as to breach of contract claim, this claim is not before us.

Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996). JMOL is only proper when "the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion." Id. In conducting our review, we consider the record in its entirety and "draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). We do not however "weigh the evidence, pass on the credibility of witnesses, or substitute [our] conclusions for that of the jury." Minshall v. McGraw Hill Broad. Co., Inc., 323 F.3d 1273, 1279 (10th Cir. 2003) (citation omitted).

1. Age Discrimination

Mr. Miller's theory in this case is that Eby's proffered reasons for his termination were a pretext for age discrimination. The evidentiary requirements for pretext claims under the ADEA are well established. Initially, the employee must prove the prima facie case by establishing that he was: (1) within the age group protected by the ADEA when he was terminated, (2) performing his job satisfactorily, (3) discharged, and (4) replaced by a younger person. Reeves, 530 U.S. at 142; McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). Once the prima facie case is established, a presumption of discrimination arises and the employer has the burden to produce a "legitimate, nondiscriminatory reason" for its action. Reeves, 530 U.S. at 142. If the

employer proffers a legitimate reason, the employee then must prove, by a preponderance of the evidence, that the employer's explanation is merely a pretext for unlawful discrimination. Id. at 143. At this point, the McDonnell Douglas framework, with its presumptions and burden shifting, drops out and the sole issue is whether unlawful discrimination occurred. Id. 142-43. However, in deciding this issue, the jury is still entitled to consider the evidence establishing the prima facie case and the reasonable inferences drawn therefrom. Id. at 143.

Here, the parties stipulated to the prima facie case,[3] and Eby has proffered a legitimate, nondiscriminatory reason–RIF–for terminating Mr. Miller. Therefore, the only question before us is whether Mr. Miller sufficiently established that Eby's proffered reason was a pretext for discrimination.

Pretext exists when an employer does not honestly represent its reasons for terminating an employee. See The American Heritage Dictionary of the English Language (4th ed. 2000) (pretext is defined as (1) "An ostensible or professed purpose; an excuse" and (2) "An effort or strategy intended to conceal something"). And while rejection of the employer's explanation does not compel a finding of discrimination, "it is permissible for the [factfinder] to infer the

---

[3]Even though the parties did not expressly state they were stipulating to the prima facie case, the parties' stipulations included the following: (1) Mr. Miller's and Mr. Fairbanks' relative ages, (2) that Mr. Miller was terminated, (3) that Mr. Miller's performance was not a factor in his termination, and (4) that Mr. Fairbank replaced Mr. Miller.

ultimate fact of discrimination from the falsity of the employer's explanation." Reeves, 530 U.S. at 147. The Court further explained that "[s]uch an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." Id. (internal quotations and citation omitted). In drawing such inference, the factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions–simply disbelieving the employer is insufficient. Id. at 146-47. However, the evidence establishing the prima facie case, along with the reasonable inferences drawn therefrom, coupled with a disbelief of the employer's explanation, can be sufficient to make this finding. Id. at 147; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Eby argues that Mr. Miller failed to prove pretext because he did not sufficiently establish that Eby's RIF explanation was false, and that even if the jury disbelieved its RIF justification, the evidence was insufficient to infer that age discrimination motivated its decision. Upon reviewing the record, we conclude that Mr. Miller has provided sufficient evidence upon which the jury could reasonably conclude that Eby's stated reasons for terminating him, including a RIF, were disingenuous.

First, Mr. Miller has provided evidence that the explanation he was given

- 10 -

the day he was fired was false. Mr. Miller was told that his position was being eliminated and that Don or Mike would assume his duties, but this is not what happened. Rather, Mr. Miller was replaced the day after he was fired by someone from outside EMC who was hired at roughly the same salary and was twenty-four years younger than Mr. Miller.

"One way a RIF plaintiff may show pretext is to present evidence that, in fact, his job was not eliminated but remained 'a single, distinct position.'" Abuan, 353 F.3d at 1169 (quoting Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996)). EMC retained "general manager" as a "single and distinct position," even though Mr. Miller was told the position was being eliminated. In explanation, Don testified that EMC had not decided what they were going to do when Mr. Miller was terminated. Eby further argues that eliminating a general manager position is "facial[ly] implausib[le]" and shows Mr. Miller's perception of EMC's plans was unreasonable, and that its representation of who would assume Mr. Miller's job was too vague to be relied on. Certainly the jury could have accepted Eby's argument; however, we cannot say that there was insufficient evidence upon which to accept Mr. Miller's explanation, which is clearly what the jury did.

Second, Mr. Miller also produced evidence that Eby gave the EEOC a false reason for his termination. Eby stipulated at trial that Mr. Miller's performance was not a factor in its decision to fire him even though it had previously told the

EEOC performance was a factor. Eby concedes, as it must, that this evidence suggests it gave a false reason to the EEOC, but the company argues this does nothing to prove that its other justification–RIF–was false. We disagree.

One of the primary roles of the factfinder is to assess credibility in deciding how to view the evidence. Lamon v. City of Shawnee, Kan., 972 F.2d 1145, 1159 (10th Cir. 1992) ("It is the jury's exclusive province to assess the credibility of witnesses and determine the weight to be given to their testimony."). Indeed, the jury in this case was instructed that it could consider credibility "in deciding the weight and credit" to give the evidence. The same principle applies here. The factfinder is entitled to infer from any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reasons for its action that the employer did not act pursuant to those reasons, Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997), and we can see no reason to limit this inference to the specific proffered reason suffering from an inconsistency. If the factfinder concludes that one of the employer's reasons is disingenuous, it is reasonable for it to consider this in assessing the credibility of the employer's other proffered reasons.

Finally, the parties disagree on whether, in assessing the credibility of Eby's RIF justification, the jury must consider the financial condition and employment actions of the Eby companies as a whole or only EMC. Eby argues

that, considering the companies as a whole, there was sufficient evidence to establish a RIF given that 29 other Eby employees were terminated around the same time as Mr. Miller, and there was a general downturn in the assisted-living industry causing financial problems for EDM and other Eby companies. Mr. Miller argues that EMC is the only relevant company because it is an independent corporation, and he was never employed by any other Eby company. Further, he asserts that only considering EMC unmistakably shows the RIF explanation was false because Eby admitted there was no RIF at EMC specifically, and when he was terminated the company was projecting a profit for the second year in a row.

We refuse to find as a matter of law that the jury was required to accept either party's view of the evidence. Rather, this was a question of fact for the jury to resolve. The district court admitted Eby's evidence regarding the financial condition of the Eby companies as a whole, and with all the evidence before it, the jury rejected Eby's RIF explanation. We cannot say this conclusion was unsupported by substantial evidence. Dodoo v. Seagate Tech., Inc., 235 F.3d 522, 531 (10th Cir. 2000).

Eby also argues that even if the jury was reasonable in rejecting its RIF explanation, the evidence was insufficient to prove that its actions were motivated by age discrimination. Specifically, Eby argues the comments about Mr. Miller's age fail to establish discriminatory motive. Again, we disagree.

Addressing sufficiency of the evidence in ADEA cases, the Supreme Court has established that once the employer has proffered a legitimate, non-discriminatory justification

> the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven "that the defendant intentionally discriminated against [him]" . . . . The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.

Hicks, 509 U.S. at 511. The evidence establishing the prima facie case coupled with the jury's rejection of the employer's explanation will not always support a finding of discrimination, such as in cases where the "plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred," Reeves, 530 U.S. at 148, but this is not the case here.

As discussed above, Mr. Miller has done more than create a "weak issue of fact" as to whether Eby was truthful in explaining why it terminated Mr. Miller by showing multiple false explanations were given, and once Eby's explanation is rejected there is no apparent alternative legitimate justification for Mr. Miller's termination. See id. (citing cases recognizing that in some cases the facts show there is an alternative legitimate explanation that prevents a finding of discrimination). "Events

have causes; if the only explanations set forth in the record have been rebutted, the jury is permitted to search for others, and may in appropriate circumstances draw an inference of discrimination." Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1292 (D.C. Cir. 1998). The employer is in the best position to explain its actions, and when it chooses to lie about its reasons for terminating an employee it runs the risk that "the lie will lead the jury to draw an adverse inference." Id. at 1293. This is true even when there are possible legitimate explanations for the lie. Id. at 1294 n.8 ("[T]he fact that a lie could have multiple explanations, some of them well-intentioned, cannot and should not foreclose the finder of fact, after hearing witness testimony and assessing the evidence as a whole, from deciding that the real motivation for lying was not innocent, but discriminatory.").

And while we might agree that the comments made to Mr. Miller by members of the Eby family are insufficient in themselves to prove discriminatory motive, see Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994) ("Isolated comments . . . are insufficient to show discriminatory animus in termination decisions.") (citation omitted), this was not the only evidence before the jury. Rather, the jury had the evidence from the prima facie case and the fact that Eby lied about its reasons for firing Mr. Miller, coupled with the comments. As such, when

viewed as a whole, the record contains sufficient evidence to support the jury's finding of age discrimination.

2. Willfulness

Eby also contends the evidence was insufficient to support a finding of willful discrimination. However, we agree with amicus EEOC that Eby failed to preserve this issue for appeal. "To preserve a sufficiency of the evidence claim for appellate review, a party must move for judgment as a matter of law . . . under Federal Rule of Civil Procedure 50(a) at the close of the evidence." United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1228 (10th Cir. 2000). One of the purposes of these motions is to alert the opposing party (and the court) of any deficiencies in the case, "thereby giving the party an opportunity to rectify any deficiencies prior to the case being submitted to the jury." Cummings v. Gen. Motors Corp., 365 F.3d 944, 949 (10th Cir. 2004). Thus, the moving party must "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50(a)(2).

Failure to sufficiently raise an issue in a motion for JMOL bars appellate review of that issue. Cummings, 365 F.3d at 949. In determining whether an issue has been sufficiently raised, the court liberally construes the party's motion for JMOL. Id. Technical precision is not the standard.

Rather, the moving party need only "adequately notify the court of the issues being raised." Id. at 950.

Here, Eby made two oral motions for JMOL before the case was submitted to the jury. In both motions the company argued there was insufficient evidence to support a finding of age discrimination based on the evidentiary requirements for proving an ADEA claim discussed above; however, neither motion asserted that (assuming the motion was denied) the evidence still was insufficient to support a finding of willfulness under the ADEA.

While it might be argued that a sufficiency challenge to finding willful discrimination is encompassed in a challenge to finding age discrimination in general, we find this position in error. See Wharf, 210 F.3d at 1228-29 (rejecting argument that damages challenge was raised by implication in stated non-damage grounds for JMOL); Cummings, 365 F.3d at 950 (refusing to find issue of liability in general was raised when defendant only directly addressed a defense to liability). To prove willful discrimination the plaintiff must establish that the "employer either knew or showed reckless disregard" as to whether its conduct violated the ADEA. Hazen Paper Co. v. Biggins, 507 U.S. 604, 617 (1993). This evidentiary showing is distinct from the prima facie case and pretext standards

discussed above. Therefore, by failing to challenge willfulness directly, Eby did not alert Mr. Miller as to a possible evidentiary deficiency on this issue, and Mr. Miller was not afforded an opportunity to correct such problem before the case was submitted to the jury, if one existed.

Further, Eby failed to object to the jury instruction on willfulness. See Atchely v. Nordam Group, Inc., 180 F.3d 1143, 1147-48 (10th Cir. 1999) (finding that where employer failed to raise punitive damage issue in motion for JMOL and also failed to object to punitive damage jury instruction, issue was not preserved for appeal). Thus, Eby failed to give any indication during trial that sufficiency of the evidence regarding willfulness was an issue. As such, Eby is barred from raising this issue on appeal. To hold otherwise would be in contravention of the purposes of Rule 50(a) motions.

B. Motion for a New Trial

Eby seeks a new trial on two grounds: (1) the district court erred in instructing the jury on pretext, and (2) the district court erred in excluding Eby's evidence regarding Mr. Miller's performance on the basis of the parties' stipulation that his performance was not an issue when Mr. Miller was allowed to introduce the EEOC letter referencing performance. As both of these arguments are factually related, we address them together.

First, Eby contends the evidence was insufficient to support a jury instruction on pretext as the only evidence of pretext–the EEOC letter–was inadmissible because it violated the parties' stipulation that Mr. Miller's performance was not a factor in his termination. We disagree with Eby's characterization of the evidence.

The parties stipulated that "[i]n terminating [Mr. Miller's] employment, no consideration of any kind was given to [his] past performance." However, the EEOC letter specifically identified Mr. Miller's performance as one of the factors Eby considered in terminating him. By referencing this letter, Mr. Miller was not attempting to prove that his performance was factor, which would be in violation of the stipulation; rather, he was attempting to show that Eby had lied to the EEOC about why he was terminated, suggesting, in general, that Eby's proffered reasons for firing him were untruthful and a pretext. This was not a misuse of the parties' stipulation.

Further, as discussed previously, the EEOC letter was not the only evidence suggesting pretext. Mr. Miller also produced evidence showing the explanation Eby gave to him on the day he was terminated was false. We have previously held that a pretext instruction "is <u>required</u> where, as here, a rational finder of fact could reasonably find the [employer's]

explanation false and could 'infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.'" Townsend v. Lumbermens Mut. Cas. Co., 294 F.3d 1232, 1241 (10th Cir. 2002) (quoting Reeves, 530 U.S. at 134) (emphasis added). Thus, reviewing the instructions de novo, we conclude they "state[d] the applicable law and provide[d] the jury with an appropriate understanding of the issues and the legal standards to apply."[4] Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1424 (10th Cir.1993).

Relatedly, Eby's argument that it was entitled to introduce evidence of Mr. Miller's performance in an attempt to explain its statement in the letter to the EEOC is in error. As Eby admits, the stipulation removing Mr. Miller's performance as an issue in this case was voluntarily entered into by both parties for strategic reasons. Stipulations are generally considered judicial admissions, Vallejos v. C.E. Glass Co., 583 F.2d 507, 510 (10th Cir. 1978), and are routinely accepted as they increase efficiency in the judicial process. As such, "[t]his court is . . . reluctant to relieve parties from the benefits, or detriments of their stipulations." Stafford v. Crane,

---

[4]Mr. Miller asserts we should apply a plain error standard of review, arguing Eby failed to preserve its jury instruction challenge for appeal. Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1289 (10th Cir. 1999). As we have resolved this issue in Mr. Miller's favor using the standard more preferable to Eby, we find it unnecessary to address this issue.

382 F.3d 1175, 1180 (10th Cir. 2004) (internal quotations and citation omitted). Further, the district court is vested with broad discretion in deciding whether to enforce a parties stipulation or not, Wheeler v. John Deere Co., 935 F.2d 1090, 1098 (10th Cir. 1991). Under the facts of this case, we cannot say the district court abused its discretion in enforcing the stipulation against Eby.

AFFIRMED.