**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 7, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BEVERLY KELLY,

       Plaintiff-Appellee,

v.

METALLICS WEST, INC.,

       Defendant-Appellant.

No. 04-1051

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 01-M-1463 (MJW))**

---

Submitted on the briefs:[*]

Keith Cross an Joseph Bennett, Cross & Bennett, LLC, Colorado Springs, Colorado, for Defendant-Appellant.

Douglas R. Ware and R. Neal Mynatt, Ware & Mynatt, L.L.C., Durango, Colorado, for Plaintiff-Appellee.

---

Before **LUCERO, McKAY**, and **ANDERSON**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(s); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

**LUCERO**, Circuit Judge.

Plaintiff-appellee Beverly Kelly sued her former employer defendant-appellant Metallics West, Inc. (Metallics West), alleging unlawful discrimination and retaliation under the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (ADA). The case was tried to a jury, which entered a verdict for Kelly, finding that Metallics West had violated the ADA by refusing to permit Kelly to return to work with supplemental oxygen, and by terminating her employment in retaliation for requesting the accommodation of returning to work with supplemental oxygen. The jury awarded compensatory damages of $50,000 to Kelly. Metallics West argues that the judgment against it must be reversed for two reasons: (1) the ADA did not require it to provide Kelly, an employee "regarded as disabled" but not actually disabled, with reasonable accommodation; and (2) the ADA did not provide Kelly with a remedy of compensatory damages for a retaliation claim. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, and basing our holding on the plain language of the ADA, we **AFFIRM**.

I

"When reviewing a jury verdict, we review the record in favor of the prevailing party, and give that party the benefit of all reasonable inferences to be

drawn from the evidence." Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1108 (10th Cir. 2005) (quotation omitted). Viewed in accordance with this standard, the record reflects the following facts.

Kelly began working for Metallics West in April 1996 as a receptionist. In August 1999, she was promoted to customer service supervisor. A key function of this position was inputting incoming orders. In mid-May 2000, while still engaged in the customer service supervisor position with Metallics West, she was hospitalized due to a blood clot or pulmonary embolism in her lung.[2] She was discharged from the hospital on May 22 of that year, and returned home on supplemental oxygen.

Her physician cleared Kelly to return to work on May 30. Kelly attempted to return to work on May 30 without supplemental oxygen. The attempt did not go well. She felt short of breath, light-headed, and had a headache. On June 1, she returned to her doctor, who wrote her a note stating "Patient needs to use $0_2$ at work." Aplt. App., Vol. III at 875.[3]

---

[2]  In its statement of facts, Metallics West contends that "during the course of her employment Kelly had been absent an excessive amount due to illnesses." Aplt. Opening Br. at 5. Not only was this interpretation of her personnel records contested at trial, it is irrelevant to the issues on appeal.

[3]  A photocopy of this note, like many others inscribed on prescription pads and entered into the record in this case, is covered by patterned markings that read "VOID." Metallics West notes this fact in its brief. Aplt. Opening Br. at 7. The most reasonable inference to be drawn from the markings, however, is not

(continued...)

Kelly testified that she provided the note from her doctor to someone at Metallics West; she did not remember whom. She did recall contacting Michael Mola, Chairman of the Board of Metallics West, and telling him that she needed to use oxygen to return to work. She testified that he told her, "No, there will be no oxygen on the premises." Id., Vol. II at 360. He encouraged her to file for short-term disability instead. Kelly stated that she attempted to describe the supplemental oxygen device to Mr. Mola, telling him it was only a small device she could keep beside her desk, but he stated "I don't want to hear about it. You're not bringing that in here." Id. at 452.

Kelly applied for and received short-term disability benefits from June 2 to June 19, 2000. Although a CAT scan on June 12 revealed that the embolism had resolved, Kelly continued to experience shortness of breath. On June 13, her doctor released her to return to work without oxygen. Her doctor testified that she gave Kelly this release on a trial basis because Metallics West had told her she could not return to work with oxygen. In order to build up her air capacity before attempting to work again, Kelly did not return to her employment until June 19.

---

[3](...continued)
that the physician intended to "void" the requirement of oxygen, but that the markings represent a security feature, designed to prevent patients from photocopying prescriptions and obtaining drugs that have not been prescribed.

Kelly worked at Metallics West without oxygen from June 19 until June 26. During this time period, she began suffering from headaches and lightheadedness. On June 26, she returned to her doctor to have her oxygen level checked, and learned that it was low. Her doctor provided her with a release on that date stating, "May return to work with oxygen." Id., Vol. III at 882. This release was not provided to Metallics West until Kelly's attorney contacted Metallics West a month later.

There is no dispute that with supplemental oxygen, Kelly was capable of performing the essential functions of her job. On June 27, Kelly telephoned Mr. Mola and told him that her doctor required her to have supplemental oxygen if she was to return to work. Mr. Mola again refused to allow her to use oxygen at work. He stated that he did not want the responsibility because she might "fall over dead." Id., Vol. II at 377. He told her to go back on disability, and stated "I'm going to have a meeting of management and you will be hearing from us." Id. at 379.

On the same day, Mr. Mola wrote Kelly a letter which she interpreted as a termination of her employment, stating:

> Relative to our conversation of this morning concerning your absen[ce]. It appears that your health situation the past few months has not improved. You have lost considerable time and your words to me this morning is that you and your doctor have not found the answer and you would either report to work with an oxygen bottle or

lose more time.  Either condition does not make for a stable employee.

Based on this information, management in a meeting this morning, voted to hire a new replacement for your job.  This job of order entry is so critical that we cannot do without a full time person.  You will need to contact Ann or Shawn to arrange your Cobra Insurance payments.

Bev, you have been an exceptional employee these past years and your professionalism and genial manner endeared you to all of us. You are a very special person.  If and when your health improves we will try to work with your doctors and you for a safe return to us.  As I indicated we'd try to find another job within our organization that fits your talent and drive.

We are all praying for your swift and complete recovery.

Id., Vol. III at 883.

On July 1, 2000, Metallics West placed a classified advertisement seeking a "data entry person for order input, also able to handle multi-line phones."        *Id.* at 884.  This position was filled at the end of July 2000.  Kelly again applied for and received short-term disability benefits, which expired on August 28, 2000.  She did not return to work at Metallics West.  This action followed.

**II**

Kelly brought claims against Metallics West for both discrimination and retaliation under the ADA.  After Metallics West moved for summary judgment on Kelly's claims, the district court ruled that her need for oxygen did not constitute a disabling impairment because it was temporary and could be

alleviated by the use of portable oxygen. [4] The district court permitted the discrimination claim to go forward, but did so, however, on a theory that Metallics West had regarded Kelly as disabled and had terminated her employment because of the perceived disability. (It also denied summary judgment to Metallics West on the retaliation claim.)

At trial, Metallics West moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), arguing that an employee merely perceived by her employer as disabled is not entitled to receive a reasonable accommodation pursuant to the ADA. The district court denied the motion. Metallics West also objected to the district court's instructions on reasonable accommodation, and tendered a complex special verdict form that would have required the jury, among other things, to specify whether Metallics West regarded Kelly as disabled because she had requested a reasonable accommodation. See id. , Vol. III at 1064-65. The district court denied the objection to the instruction and rejected the special verdict form.

The jury then returned a verdict that read as follows:

_____

[4] Kelly's doctor testified that so long as she used supplemental oxygen, she was able to "do all of life's major activities." Aplt. App., Vol. II at 510. Since corrective measures mitigated the limitation that her condition imposed in performing major life activities, she was not actually disabled. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 488-89 (1999).

-7-

1. Did the defendant violate the [ADA] by refusing to permit the plaintiff to return to work with supplemental oxygen?

<u>yes</u>

2. Did the defendant violate the [ADA] by terminating the plaintiff's employment in retaliation for her asking for the accommodation of returning to work with supplemental oxygen?

<u>yes</u>

If the answer to either or both of these questions is "yes," then state the amount of compensatory damages, if any, caused by the defendant's conduct?

<u>$50,000.00</u>

<u>Id.</u>, Vol. I at 147.

### III

We review the denial of a motion for JMOL de novo, using the same legal standard as the district court. JMOL is only proper when the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion. In conducting our review, we consider the record in its entirety and draw all reasonable inferences in favor of the nonmoving party. We do not however weigh the evidence, pass on the credibility of witnesses, or substitute our conclusions for that of the jury.

<u>Miller</u>, 396 F.3d at 1110-11 (citations and quotations omitted).

We review decisions as to the wording of particular jury instructions and special verdict forms under an abuse of discretion standard. <u>Johnson v. Unified Gov't of Wyandotte County/Kan. City</u>, 371 F.3d 723, 730 (10th Cir. 2004). "In assessing whether the court properly exercised that discretion, we must examine

-8-

the instructions as a whole to determine whether they sufficiently cover the issues, facts and evidence in the case. The ultimate question of whether the jury was properly instructed is a question of law which we review de novo." Wolfgang v. Mid-Am. Motorsports, Inc., 111 F.3d 1515, 1526 (10th Cir. 1997) (citation omitted).

## IV

Metallics West argues that it was legal error for the district court to have instructed the jury on reasonable accommodation in a "regarded as disabled" ADA case. Kelly responds that any alleged errors in the verdict form or instructions concerning reasonable accommodation were harmless. She contends that the jury could have found in her favor, independent of any duty to accommodate, on the basis that the ADA was violated when Metallics West terminated her employment.

Kelly's harmless error argument resembles the reasoning the district court employed when it denied Metallics West's Rule 50(a) motion, ruling that "[t]his case is not being submitted to the jury on a failure to accommodate theory of liability," but that failure to accommodate was merely relevant to Kelly's contention that Metallics West perceived or regarded her as disabled. Aplt. App., Vol. IIA at 704. Notwithstanding its statement concerning plaintiff's theory of the case, however, the district court's instructions permitted the jury to reach a

verdict in favor of Kelly on a "failure to accommodate" theory. In explaining

what constitutes "discrimination" under the ADA, for example, the district court

explained that one form of discrimination is

> [n]ot making a reasonable accommodation to the known
> physical or mental limitations of an otherwise qualified individual
> who is regarded as disabled, and denying employment opportunities
> to an employee who is an otherwise qualified individual and is
> regarded as having a disability if such denial is based on the need of
> the employer to make reasonable accommodation to the perceived
> physical or mental impairments of the employee.

Id. at 779.

Given the rather general language in the verdict form, which was provided

instead of the more specific verdict form tendered by Metallics West, we cannot

ignore the possibility that the jury made its award in favor of Kelly on a theory

that Metallics West terminated her employment based on her need for reasonable

accommodation. We must therefore address the question of whether such a theory

finds support in the law.

In a previous case from this circuit, we held that an employee who was

"regarded as disabled" had made out a prima facie case of discrimination based

on her employer's alleged failure to reasonably accommodate her perceived

disability. McKenzie v. Dovala, 242 F.3d 967, 975 (10th Cir. 2001). Metallics

West argues that McKenzie did not actually determine the legal issue, but merely

dealt with the sufficiency of evidence to support a prima facie case of

discrimination. Some circuits, presented with the legal argument it now makes, have determined that reasonable accommodation is not available to an employee merely regarded or perceived as disabled. See Kaplan v. City of N. Las Vegas, 323 F.3d 1226, 1231-33 (9th Cir.); Weber v. Strippit, Inc., 186 F.3d 907, 916-17 (8th Cir. 1999); Workman v. Frito-Lay, Inc., 165 F.3d 460, 467 (6th Cir. 1999); Newberry v. E. Texas State Univ., 161 F.3d 276, 280 (5th Cir. 1998). Others hold that it is available. Williams v. Philadelphia Housing Auth. Police Dep't, 380 F.3d 751, 773-76 (3d Cir. 2004); Katz v. City Metal Co., Inc., 87 F.3d 26, 33 (1st Cir. 1996).

We agree with the Third and First Circuits. The ADA prohibits discrimination against "a qualified individual with a disability." 42 U.S.C. § 12112. The Act defines "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8). A "disability" is defined as being, among other things, "regarded as having . . . an impairment" that "substantially limits one or more of the major life activities of . . . [an] individual." Id. § 12102(2). [5] Thus, the plain

---

[5] "A person is regarded as disabled when '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life

(continued...)

-11-

language of the ADA's interlocking statutory definitions includes within the rubric of a "qualified individual with a disability" protected by the ADA individuals (1) regarded as disabled but (2) who, with reasonable accommodation, can perform the essential functions of the position that they hold. The facts of Kelly's case bring her within this definition.

Despite the foregoing statutory analysis, the Ninth Circuit in Kaplan expressed concern that such a "formalistic reading of the ADA" would lead to "bizarre results." Id. The "bizarre results" primarily concern the more favorable treatment that would be accorded to those employees "regarded as disabled" by their employer contrasted with those who are not. See id. (quoting Weber, 186 F.3d at 917). Kaplan reasoned that it would be a "perverse and troubling result" if "impaired [but not actually disabled] employees would be better off under the statute if their employers treated them as disabled even if they were not." See id. We fail to understand the point, for it is in the nature of any "regarded as disabled" claim that an employee who seeks protections not accorded to one who is impaired but not regarded as disabled does so because of the additional

5(...continued)
activities.'" Lanman v. Johnson County, Ks., 393 F.3d 1151, 1156 (10th Cir. 2004) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)). See also 29 C.F.R. § 1630.2(l).

-12-

component–"regarded as" disabled. This rationale provides no basis for denying validity to a reasonable accommodation claim.

The argument that accommodation of perceived disabilities would "do nothing to encourage . . . employees to educate employers of their capabilities" or to "encourage the employers to see their employees' talents clearly," see id., is also flawed. The ADA is concerned with safeguarding the employee's livelihood from adverse actions taken on the basis of "stereotypic assumptions not truly indicative of the individual ability" of the employee. 42 U.S.C. § 12101(a)(7). As the Third Circuit expressed it, the real danger is not that an employee will fail to educate an employer concerning her abilities, but that "[t]he employee whose limitations are perceived accurately gets to work, while [the employee regarded as disabled] is sent home unpaid." Williams, 380 F.3d at 775.

That is to say, an employer who is unable or unwilling to shed his or her stereotypic assumptions based on a faulty or prejudiced perception of an employee's abilities must be prepared to accommodate the artificial limitations created by his or her own faulty perceptions. In this sense, the ADA encourages employers to become more enlightened about their employees' capabilities, while protecting employees from employers whose attitudes remain mired in prejudice.

An additional concern arises regarding the use of the phrase "reasonable accommodation." Can it be inherently "unreasonable" to accommodate an

employee who is only regarded as disabled? Congress does not appear to have thought so, for its definition of "reasonable accommodation" makes no distinction between employees who are actually disabled and those who are merely regarded as disabled. See 42 U.S.C. § 12111(9). Reasonable accommodation for a disabled person includes "acquisition or modification of equipment or devices," such as the oxygen Kelly requested in this case. Id. We conclude that an employer must reasonably accommodate employees regarded or perceived as disabled. We thus see no reason to depart from Congress's plain language. The district court did not err by giving the challenged instructions on this point, in rejecting the tendered special verdict form, or in denying Metallics West's Rule 50(a) motion.

## V

Metallics West contends that the verdict form and the jury instructions permitted the jury to award compensatory damages for Kelly's retaliation claim. It contends that the ADA does not provide for an award of compensatory damages for a retaliation claim. Metallics West did not raise this issue in the district court. We will review an issue not raised in district court only for plain error. The error asserted in this instance is not the sort of "plainly erroneous and prejudicial" error

-14-

requiring reversal under that doctrine. See Reed v. Landstar Ligon, Inc., 314 F.3d 447, 453-54 (10th Cir. 2002) (further quotation omitted).

The judgment of the district court is AFFIRMED.