ORDER AND JUDGMENT*
PAUL J. KELLY, JR., Circuit Judge.
Plaintiff-Appellant Kameisha Hamilton appeals from the grant of summary judgment in favor of her former employer and certain employees, Defendanh-Appellees Boise Cascade Express (“Boise”), Samantha Mohr (site manager), Robert Harper (district sales manager), and Laurie Johnson (human resources manager), on her race discrimination claims under Title VII and 42 U.S.C. § 1981. Our jurisdiction arises under 28 U.S.C. § 1291,[1] and we affirm.

Background

Plaintiff began her employment with Boise on March 24, 2003. Beginning in late April or early May, Plaintiff had a number of appointments with her physical therapist and physician that required her to miss some of her 7:30 a.m. to 4:30 p.m. shift. Although the exact times of the appointments are not found in the record, Plaintiff admitted that she was never at an appointment before 8:00 a.m. or after 5:00 p.m. Aplt.App. at 1365. The offices of her physical therapist and physician are located 40 minutes and one hour from her workplace, respectively. See id. at 1365-66. Plaintiff admitted that, for example, to arrive at a 4:00 p.m. physical therapy appointment, she would have to leave at 3:20 p.m. at the latest to arrive on time. See id. at 1365. Plaintiff attended a number of appointments on days when she was scheduled to work.
Another associate complained to a supervisor that Plaintiff was not working the whole day, which the supervisor confirmed. See id. at 245. Subsequently, the human resources manager, Laurie Johnson, reviewed Plaintiffs time sheets, phone records, and key fob records (records of when an employee’s badge was swiped to enter the building), and concluded that Plaintiff had inaccurately reported her time on the following dates: May 1, May 22, May 30, June 2, June 11, June 12, June 16, and June 20, 2003. See id. at 251-55. On June 23, 2003, Robert Harper, a sales manager but not a supervisor over Plaintiff, invited Plaintiff to a meeting in Ms. Johnson’s office where Ms. Johnson told Plaintiff the purpose of the meeting was to discuss her excessive absenteeism and time card fraud. Ms. Johnson showed *731 Plaintiff her phone records and time sheets saying that she committed time card fraud. See id. at 1353. At the end of the meeting, Ms. Johnson told Plaintiff her employment was being terminated because she committed time card fraud. See id. at 1354.
Plaintiff filed this lawsuit alleging in her complaint that she was fired because of her race.[2] Defendants filed a motion for summary judgment which the district court granted. Hamilton v. Boise Cascade Express, No. 04-266, 2006 WL 149023 (W.D.Okla. Jan. 19, 2006). On appeal, Plaintiff argues that fact questions regarding Boise’s belief that Plaintiff engaged in time card fraud should have precluded summary judgment.[3]

Discussion

We review a district court’s grant of summary judgment de novo, applying the same standards as the district court. Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1112 (10th Cir.2007). Summary judgment is appropriate only “if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(c). Thus, to survive summary judgment a non-moving party must put forth sufficient evidence — more than a scintilla — such that a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We view the facts in the light most favorable to the non-moving party. Scott v. Harris, — U.S. -, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007).
Where a plaintiff relies on indirect or circumstantial evidence to show discrimination under Title VII, we examine the claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Young v. Dillon Cos., Inc., 468 F.3d 1243, 1249 (10th Cir.2006). First, the plaintiff must establish a prima facie case of discrimination. See id. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the termination. See id. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the defendant’s “proffered justification is pretextual.” See id.
“In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.” Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Although we do not require “pretext plus,” specifically that a plaintiff demonstrate that the reason was false and a motive for discrimination, the falsity combined with other circumstances in the case must permit the inference that unlawful discrimination was a motivating factor in the decision. Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1111 (10th Cir.2005). In determining whether the proffered reasons were pre *732 textual, we consider the facts as they appear to the decisionmakers and consider whether they honestly believed those reasons and acted upon them in good faith. See Young, 468 F.3d at 1250.
Assuming, arguendo, that Plaintiff has established a prima facie case, Boise’s proffered non-discriminatory reason is that it terminated Plaintiffs employment because she committed time-card fraud. Plaintiff argues that there is a fact question concerning pretext when the facts are viewed collectively. Plaintiff contends that other employees were not disciplined as she was, that her time-card entries were merely erroneous, not fraudulent, and that a statement by Valetta Wright demonstrates that management did not believe that she engaged in time-card fraud. We are not persuaded.
Insofar as evidence of pretext is based upon disparate treatment, Plaintiff points to vague testimony that other employees with different supervisors also had unspecified attendance issues but were treated differently. However, this evidence falls far short of showing that new employees with approximately 90 days of employment under the same supervisor with similarly egregious reporting problems received more favorable treatment. See McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir.2006). No evidence supports this angle. Moreover, Plaintiff maintained that there were no errors on her time cards and has no explanation for the many inconsistencies. Aplt.App. at 545, 1365.
Plaintiff also relies on a statement by Valetta Wright, a former plaintiff, which she put forward to the district court for the first time in her Surreply in Opposition to Summary Judgment, to which Boise had no chance to respond before summary judgment was rendered seven days later. Ms. Wright testified at her deposition: “I remember that [Mr. Harper] said to me after they investigated that they don’t believe that [Plaintiff] intentionally was fraudulent on her time card.... And [Ms. Johnson] was right there.” Id. at 1665. Mr. Harper was not one of the decisionmakers — the decision was made by Ms. Johnson, Ms. Mohr, and Diane Wiley, the area human resources manager. See id. at 238. Plaintiff does not contest this and testified that he did not speak during the meeting. See id. at 1353. We have doubts whether this statement would be admissible, but even if it were admissible, the outcome is the same. Ms. Wright testified' that Mr. Harper made this statement the day following Plaintiffs termination, but she also testified that the day of Plaintiffs termination Ms. Johnson and Mr. Harper stated that Plaintiff had committed time-card fraud. See id. at 1679-80. Further, the decisionmakers Ms. Mohr and Ms. Johnson testified that they believed that the evidence showed, and Plaintiff admitted, that she recorded substantial time that she did not work, and the record evidence fully corroborates this determination. Boise maintains that Plaintiff missed 64 hours of unscheduled work during her first three months and that her absences should have been reported as unpaid, as Plaintiff lacked any paid time off. Even giving Plaintiff the benefit of every possible doubt, meaning that Boise gave her credit for working through nearly every lunch hour, there were still 10 hours of unaccounted time for which Plaintiff was paid.[4] Aplt.App. at 1962. Ms. Mohr specifically testified that
*733 It wasn’t necessary for her to admit to, quote, fraud. It was necessary for her to admit that she knew the time sheets were wrong. Whether she equates that with fraud or not, frankly, wasn’t relevant____ What I know is that she had admitted to physically not being at work and the information on the time sheets being incorrect.
Id. at 1281. The fact that Boise may have more generously characterized Plaintiffs conduct after the fact does not make a case for pretext especially in light of Ms. Mohr’s testimony that the distinction now used was irrelevant and the overwhelming evidence that Boise’s given justification was reasonable.
The importance of the distinction between time-card fraud and time-card mistakes, based on Ms. Wright’s testimony and relied on by the dissent, is based on the assertion that Boise would be able to bypass progressive discipline if Plaintiffs conduct was fraudulent but not if it was merely mistaken. However, Plaintiff has pointed to no evidence in the record supporting this assertion, and the record does not bear it out. Boise had a progressive discipline policy that would be triggered, for example, by attendance or performance issues. Id. at 269, 303. However, a violation of a core value of the company, which includes integrity, safety, and quality improvement, id. at 280, is an exception to the progressive discipline policy and may result in immediate termination, id. at 269, 303. Integrity issues include “when [employees] are paid for hours worked during which they were not at work.” Id. at 1961. An employer could reasonably conclude that these material deviations resulting in Plaintiff being paid for time she did not work raise an issue of integrity making progressive discipline unwarranted. The record clearly shows that Boise terminated Plaintiff for integrity issues and not for absenteeism. Id. at 1961-62. Thus, Ms. Mohr testified that it did not matter how Plaintiffs conduct was characterized because no one doubted that the conduct implicated integrity concerns. See id. at 1231. Neither Plaintiff nor the dissent has pointed to any evidence in the record supporting even the slightest inference that Boise characterized Plaintiffs conduct as time-card fraud to deprive her of progressive discipline. Boise’s characterization of Plaintiffs conduct is certainly reasonable, and hardly a “disturbing procedural irregularity” sufficient to prove pretext. See Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1119 (10th Cir.2007) (quotations omitted). Our role is “not to act as a ‘super personnel department,’ second guessing employers’ honestly held (even if erroneous) business judgments.” Dillon, 468 F.3d at 1250 (quotations omitted).
The dissent argues that the fact that Boise disciplined three African-American women around the same time supports an inference of unlawful discrimination. While evidence of a statistical correlation may create an inference of discrimination, here the evidence is too flawed to raise a jury question because it fails to compare similarly situated individuals or eliminate nondiscriminatory explanations for the disparate treatment. See Furr v. Seagate Tech., Inc., 82 F.3d 980, 986-87 (10th Cir.1996).
Although this circuit has rejected a “pretext plus” standard, there are cases where it simply would not be permissible to infer discrimination from the evidence the plaintiff has mustered to show that the employer’s proffered reason was false. See Reeves, 530 U.S. at 148, 120 S.Ct. 2097. We believe that this is one of those cases. Mr. Harper’s opinion (if it were admissible), and Ms. Johnson’s presence when he expressed it, may provide a scintilla of evidence that Boise’s explanation for terminating Plaintiff was false. But we conclude that on this thin basis — and in the face of overwhelming evidence that Plain *734 tiff was terminated because of unexplained, inaccurate time-keeping — no reasonable jury could find in Plaintiffs favor. See Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1168 (10th Cir.2007).
Finally, contrary to Plaintiffs suggestion, Plotke v. White, 405 F.3d 1092 (10th Cir.2005), is not almost directly on point here. It is true that we are skeptical of “subjective evaluations in making termination decisions,” id. at 1106, but Boise relied on documentary evidence to conclude that Plaintiff could not have worked all the time she recorded on her time sheets, even assuming she worked through her lunches, Aplt.App. at 545. In addition, none of the other evidence supporting our conclusion in Plotke is present here. See 405 F.3d at 1103-08 (relying on, for example, the proffered reason for termination was generated only after the termination, and the defendant likely fabricated evidence relating to the termination).
AFFIRMED. Plaintiffs motion to amend the caption to omit Plaintiff Danielle Callaghan as a party due to settlement is GRANTED.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. Defendants argue that the notice of appeal filed on July 14, 2006, is untimely to appeal the district court’s judgment against the Plaintiff entered on January 19, 2006. See Fed. R.App. P. 4(a)(1)(A) (notice of appeal must be filed within 30 days after judgment). This contention is meritless given that a joint stipulation of dismissal of the remaining parties and their claims was not entered until June 19, 2006, well after the January 19, 2006 judgment. See Fed.R.Civ.P. 54(b). Defendants argue that because they modified the caption in their pleadings to delete the settling plaintiffs, and the district court followed entering judgment with a similar caption, the January 19, 2006 judgment was final. We disagree. Nothing suggests that the caption had ever been properly amended, or that a final judgment over all the parties was entered prior to the stipulation of dismissal of the remaining parties. See Beugler v. Burlington N. & Santa Fe Ry. Co., 490 F.3d 1224, 1227 n. 1 (10th Cir.2007).

. Originally, the lawsuit involved four other plaintiffs who have all settled their claims with Defendants.

. We note that Plaintiff’s briefs fail to conform to the requirements of Federal Rule of Appellate Procedure 28(a)(7) and (e) in the statement of facts and citations to the record. It is inappropriate to reproduce verbatim the voluminous facts from summary judgment pleadings and not pinpoint cite to the appendix. See 10th Cir. R. 28.4; Doeblers’ Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n. 8 (3d Cir.2006). Despite these deficiencies, we will still address the merits of Plaintiff’s appeal. See MacArthur v. San Juan County, 495 F.3d 1157, 1161 (10th Cir.2007).

. Ms. Mohr testified that Plaintiff "was not terminated for filling out her timesheet incorrectly on a daily basis. For example, recording 8 hours when she only worked 7 or really worked 9. Had her total hours worked added up to the right amount at the end of the week, she would not have been disciplined.” Aplt. App. at 1962 (emphasis in original).